

**FILED**

Sep 23 2015, 8:42 am

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Deborah K. Smith | Andrea L. Ciobanu |
| Sugar Creek Law | Alex Beeman |
| Thorntown, Indiana | Ciobanu Law, P.C. |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Paternity of Makayla Lauren Pickett | September 23, 2015 |
| | Court of Appeals Case No. 29A02-1501-JP-9 |
| Gregg Roberts, | |
| *Appellant-Respondent,* | Appeal from the Hamilton Superior Court |
| v. | The Honorable William J. Hughes, Judge |
| Shonda Pickett, | The Honorable David J. Najjar, Magistrate |
| *Appellee-Petitioner* | Case No. 29D03-9504-JP-366 |

**Crone, Judge.**

# Case Summary

Gregg Roberts ("Father") appeals the trial court's order finding him in contempt for failing to pay child support to his child, Makayla Lauren Pickett ("Child"), and ordering him to contribute to her college expenses based on a motion filed by Shonda Pickett ("Mother"). As an initial matter, Father contends that the trial court's findings of facts and conclusions thereon are inadequate for appellate review. He also argues that the trial court erred by failing to find that Child repudiated him, requiring him to contribute half the balance remaining after Child's contribution toward college expenses is applied, basing his contribution toward college expenses on the cost of a private university rather than a public university, and ordering him to pay for college expenses incurred before Mother's motion for college expenses was filed. Finally, he asserts that the trial court erred by ordering him to pay part of the attorney's fees incurred by Mother as a sanction for being in contempt of court.

We conclude that the trial court's findings and conclusions are adequate for our review. We also conclude the Father waived his argument that Child repudiated him and that the trial court did not err by ordering Father to pay half the remaining balance of Child's college expenses and part of Mother's attorney's fees. However, we conclude that the trial court erred by basing Father's contribution toward Child's college expenses on the costs of a private university rather than a public university and by ordering him to pay for college expenses incurred before Mother's motion was filed. Therefore, we affirm in part, reverse in part, and remand.

## Facts and Procedural History

[3] Child was born February 21, 1995, in Indianapolis. Mother filed a petition to establish Father's paternity and for child support. Father agreed to paternity, and Mother and Father agreed that Mother would have custody of Child and Father would exercise visitation. The trial court ordered Father to pay weekly child support of $78.00 and part of Child's uninsured medical expenses and purchase a life insurance policy on his own life with Child named as the beneficiary.

[4] Father exercised visitation with Child, but Mother and Father's relationship was hostile and turbulent. In 2001, following a custody evaluation by two doctors, the trial court issued an order in which it found that both parties engaged in conduct that was destructive to Child. The trial court ordered that Mother continue sole custody of Child conditioned upon her participation in reunification therapy with Father, that Father's visitation be as consistent as possible, and that the parties refrain at all times from speaking negatively about each other in or near Child's presence. Parents and Child engaged in reunification therapy, which was terminated by the counselor. Initially, Father exercised visitation with Child every other weekend and on Wednesdays, but at some point his visitation diminished.

[5] Child graduated from high school in the spring of 2013. Before Child graduated from high school, she and Father would go out to dinner every one or two weeks. At some point, Child informed Father that she was going to attend Butler University. Child's high school provided each graduate with six

tickets to the graduation ceremony.  Child offered Father one ticket.  He accepted and attended her graduation.  After Child graduated, they had no further contact with each other.[1]  In the autumn of 2013, Child began attending Butler.

[6] On February 18, 2014, Mother filed a motion for contempt and for college expenses.  She alleged that Father had failed to pay child support and his share of Child's medical expenses and to maintain a life insurance policy.  She also asked for "an Educational Support Order allocating the college expenses between the parties" and for attorney's fees.  Appellant's App. at 73.  On February 21, 2014, Child turned nineteen and became emancipated pursuant to statute.

[7] A hearing on Mother's motion was held.   Mother's financial declaration showed that she earned a weekly gross income of $1393, or $72,436 a year.  Petitioner's Ex. 6; Appellant's App. at 76.  That amount does not include overtime.  At the end of July 2014, Mother had grossed an additional $14,867.55 from overtime.  Appellant's App. at 82-83.  Mother testified that in the past she had earned over $80,000 with overtime.  Tr. at 21.

---

[1] Child testified that she has tried to call Father, but it is unclear whether she was speaking generally about their relationship or referring specifically to the time period after she graduated.  She was asked, "Now, you stated that your relationship with [Father] fairly well ended after high school, is that correct?"  Tr. at 39.  She replied, "Yes it didn't, it wasn't my choice for it to end, it's always been, my father does not contact me, I have tried to call him."  *Id*.

[8] Father's financial declaration showed that he had $0 income. Petitioner's Ex. 9; Appellant's App. at 94. Father's mother had ovarian cancer, and his primary job was to take care of her. Tr. at 49. Father and his mother each owned a 50% interest in a company that rents storage units. *Id*. at 68-69. Approximately 60% of the storage units were occupied and producing rental income. *Id*. at 69. The company also had two rental locations. *Id*. at 68. One of the company's rental locations was lost to a fire in 2010. *Id*. at 46. Another location was leased to a restaurant, but the restaurant failed. *Id*. at 46-47. Father performed maintenance for the company. The company's rental income was held in a joint bank account with his mother. Father had monthly expenses of $3249.30, which were paid from this account. Appellant's App. at 96. Father earns some money selling things on Craigslist.

[9] Mother testified that the annual cost to attend Butler was approximately $49,000 per year. Tr. at 25. Child's scholarships, grants, and financial aid covered about half that expense. *Id*. The actual cost of her first year at Butler was just under $23,000. *Id*. at 25-26; Petitioner's Ex. 4. Child testified that the annual cost to attend Ball State University, where she had also been accepted, was approximately $22,000, and her scholarships, grants, and financial aid would have covered about half the cost. Tr. at 38.

[10] On December 5, 2014, the trial court issued an order finding Father in contempt for failing to pay child support and his share of medical expenses. It found that Father owed $1630 in child support and $1612 for medical expenses and ordered him to pay these amounts within thirty days. As a sanction for his

contempt, the court ordered Father to pay $2000 of Mother's attorney's fees. The trial court also found that Child, being over the age of nineteen, was emancipated. With regard to college expenses, the trial court found that Father "earns at least $3249 per month" and is voluntarily underemployed as he has chosen to care for his mother rather than seek additional employment or tend to the businesses that are currently paying his bills. Appellant's App. at 21. The trial court ordered that Child, Mother, and Father each be responsible for one-third of Child's college expenses. The trial court further ordered that Child's portion could be satisfied with her scholarships, grants, and work-study, and if these sources exceeded her portion, the surplus was to be applied toward reducing the total cost. The remaining balance was to be divided equally between Mother and Father. Father appeals.

# Discussion and Decision

[11] The trial court entered findings of fact and conclusions thereon sua sponte.

> Sua sponte findings only control issues that they cover, while a general judgment standard applies to issues upon which there are no findings. We may affirm a general judgment with findings on any legal theory supported by the evidence. As for any findings that have been made, they will be set aside only if they are clearly erroneous. A finding is clearly erroneous if there are no facts in the record to support it, either directly or by inference.

*Eisenhut v. Eisenhut*, 994 N.E.2d 274, 276 (Ind. Ct. App. 2013) (citations omitted).

[12]     Also, because we are dealing with family law matters, appellate review is conducted with "'a preference for granting latitude and deference to our trial judges.'" *Kicken v. Kicken*, 798 N.E.2d 529, 532 (Ind. Ct. App. 2003) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)). "An appellate court reviews a trial court's decision to order the payment of post-secondary educational expenses for an abuse of discretion." *Hirsch v. Oliver*, 970 N.E.2d 651, 662 (Ind. 2012). The trial court abuses its discretion when its decision is "against the logic and effect of the facts and circumstances" before it. *Id.* In determining whether the trial court abused its discretion, we do not reweigh the evidence or judge the credibility of witnesses, and we consider only the evidence and reasonable inferences favorable to the judgment. *Lovold v. Ellis*, 988 N.E.2d 1144, 1150 (Ind. Ct. App. 2013).

## Section 1 – The trial court's findings of fact are adequate for appellate review.

[13]     As a threshold matter, Father contends that the parties did not submit verified postsecondary education worksheets and the trial court's findings are inadequate to justify and explain its judgment, and therefore remand is necessary for the trial court to enter more complete findings or to obtain the parties' verified postsecondary education worksheets. In support, Father cites *Quinn v. Threlkel*, 858 N.E.2d 665, 670-71 (Ind. Ct. App. 2006), in which another panel of this Court concluded that remand was necessary because the trial court's findings were inadequate. There, the trial court made general findings setting each parent's percentage share of the child's college expenses

and forbidding the child from taking out any additional student loans. *Id.* at 671. On appeal, the *Quinn* court noted that there were no findings regarding the estimated cost of the college, what percentage of the cost should be borne by the child, and what type of financial aid she was expected to receive. *Id.* The *Quinn* court placed particular emphasis on the omission of any requirement that the child apply for financial aid. *Id.* Finally, the *Quinn* court also noted that the trial court's order did not mention that the child was attending a private college and the higher expense that entails. *Id.*

[14] In this case, the trial court's findings are more comprehensive than those in *Quinn*. Here, the trial court made findings regarding Father's income and Child's scholarships and financial aid, and the order requires Child to be responsible for at least one-third of her own college expenses. Appellant's App. at 21-22. Additional findings would have been welcome and facilitated our review. However, facts necessary to our review were presented as evidence and are not in dispute on appeal, and therefore the absence of postsecondary education worksheets is not detrimental to a meaningful review. The purpose of a postsecondary education worksheet is to assist the court in determining the appropriate obligation of each parent toward college expenses based upon his or her share of their total income after contribution from the student toward those expenses. Ind. Child Support Guideline 8(c). The worksheet shows each parent's percentage share of their total combined income, educational costs including tuition, room and board, books, and fees, and the amounts the student receives in scholarships and other financial aid. Here, Mother and

Father submitted verified financial declarations to the trial court. Also, evidence was submitted as to the cost of attending Butler and the amount that Child has received in scholarships and other financial aid, and the parties do not dispute these amounts on appeal. Under these circumstances, the trial court's findings are adequate for our review.

## Section 2 - Father has waived the argument that Child repudiated him.

Father argues that the trial court erred in ordering him to pay any of Child's college expenses because she repudiated him. Father failed to present this argument to the trial court, and therefore it is waived. *See Akiwumi v. Akiwumi*, 23 N.E.3d 734, 741 (Ind. Ct. App. 2014) (stating that appellant who raises issue for first time on appeal waives issue).

Waiver notwithstanding, Father's argument is unavailing. "Repudiation is defined as a complete refusal to participate in a relationship with the parent." *Lovold*, 988 N.E.2d at 1150. "Under certain circumstances, repudiation will obviate a parent's obligation to pay certain expenses for the child, including college expenses." *Scales v. Scales*, 891 N.E.2d 1116, 1119 (Ind. Ct. App. 2008). "[W]here a child, as an adult over eighteen years of age, repudiates a parent, that parent must be allowed to dictate what effect this will have on his or her contribution to college expenses for that child." *McKay v. McKay*, 644 N.E.2d 164, 166 (Ind. Ct. App. 1994). "'By college age, children of divorced parents must be expected to begin to come to terms with the reality of their family's situation. They must begin to realize that their attitudes and actions are their

individual responsibilities.'" *Id.* at 167 (quoting *Milne v. Milne*, 556 A.2d 854, 861 (Pa. Super. Ct. 1989)). "'[A]dult children who willfully abandon a parent must be deemed to have run the risk that such a parent may not be willing to underwrite their educational pursuits.'" *Id.* (quoting *Milne*, 556 A.2d at 865).

[17] Here, the trial court did not make a specific finding on whether Child repudiated Father, and therefore we may affirm on any legal theory supported by the evidence. Whether a child has repudiated a parent is a fact-sensitive determination. Although the record contains evidence that could have supported a finding that Child repudiated Father, there is also evidence that would support a determination that Child did not repudiate Father. And under our standard of review, we may consider only the evidence favorable to the trial court's judgment. That evidence shows that after Child turned eighteen but before she graduated from high school, she and Father had dinner every one or two weeks. She provided Father with one of six tickets to her graduation, and he attended. She testified that even though they did not have contact after her graduation, she wanted to maintain a relationship with Father, but he never called or tried to contact her. Based on this evidence and our deference to the trial court in family law matters, we cannot say that the trial court's decision to require Father to contribute to Child's college expenses is against the logic and effect of the facts and circumstances before it. Therefore, we affirm the requirement that Father pay part of Child's college expenses.

# Section 3 – The trial court did not commit clear error by requiring Father to pay half the remaining balance of Child's college expenses.

[18] The trial court found that Child would be responsible for one-third of her college expenses. Father challenges the trial court's decision to order him to pay half the remaining balance.[2] We review the trial court's apportionment of college expenses under a clearly erroneous standard. *Carr v. Carr*, 600 N.E.2d 943, 945 (Ind. 1992); *Winslow v. Fifer*, 969 N.E.2d 1087, 1092 (Ind. Ct. App. 2012), *trans. denied* (2013). Therefore, we will affirm the trial court unless its order "'is clearly against the logic and effect of the facts and circumstances which were before' the court." *Marriage of Hensley v. Hensley*, 868 N.E.2d 910, 913 (Ind. Ct. App. 2007) (quoting *Carr*, 600 N.E.2d at 945). In determining whether the trial court's decision is clearly erroneous, we consider only the evidence and reasonable inferences favorable to the judgment without reweighing evidence or judging witness credibility. *Winslow*, 969 N.E.2d at 1092.

> Under Indiana law, there is no absolute legal duty on the part of parents to provide a college education for their children. However, the statutory authorization for the divorce court to order either or both parents to pay sums toward their child's college education constitutes a

---

[2] Mother asserts that Father waived this argument because he failed to report any income and therefore invited any error. *See Reinhart v. Reinhart*, 938 N.E.2d 788, 791 (Ind. Ct. App. 2010) ("[A] party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct."). We disagree. The fact that Father prepared a financial declaration showing a weekly gross income of zero and testified to the same does not constitute waiver with regard to whether the trial court's determination of his share of Child's college expenses was erroneous.

reasonable manner in which to enforce the expectation that most families would encourage their qualified children to pursue a college education consistent with individual family values. In determining whether to order either or both parents to pay sums toward their child's college education, the court must consider whether and to what extent the parents, if still married, would have contributed to the child's college expenses.

*Hinesley-Petry v. Petry*, 894 N.E.2d 277, 280-81 (Ind. Ct. App. 2008) (quoting

*McKay*, 644 N.E.2d at 166), *trans. denied* (2009).

[19] Indiana Code Section 31-16-6-2(a) provides that a child support order or an educational support order may include

(1) amounts for the child's education in elementary and secondary schools and at postsecondary educational institutions, taking into account:

(A) the child's aptitude and ability;

(B) the child's reasonable ability to contribute to educational expenses through:

(i) work;

(ii) obtaining loans; and

(iii) obtaining other sources of financial aid reasonably available to the child and each parent; and

(C) the ability of each parent to meet these expenses.

[20] "[C]ollege expenses are in the nature of child support." *Panfil v. Fell*, 19 N.E.3d 772, 778 (Ind. Ct. App. 2014), *trans. denied* (2015). "[A]lthough a trial court has broad discretion to tailor a child support award in light of the circumstances before it, 'this discretion must be exercised within the methodological framework established by the guidelines.'" *Quinn*, 858 N.E.2d at 670 (quoting

*McGinley-Ellis v. Ellis*, 638 N.E.2d 1249, 1251-52 (Ind. 1994)). "*This principle applies with equal force to orders regarding post-secondary education expenses.*" *Id.* (emphasis added). Indiana Child Support Guideline 8(b) provides that "the court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense."

[21] In considering the factors set forth in Section 31-16-6-2(a), we observe that the evidence shows that Child received "straight As, maybe a B or so." Tr. at 33. Thus, she has the aptitude and ability to pursue postsecondary education. She is also able to contribute to her college expenses with her scholarships, grants, and other financial aid, and the trial court found that she should be responsible for at least one-third of her own college expenses. The trial court further found that if her financial aid, not including loans, exceeds one-third of the total costs, those funds shall be used to reduce the total balance of her college expenses before allocation between Mother and Father.

[22] In addition to the child's aptitude and ability to contribute to the costs, we also consider the ability of each parent to meet the costs. "[C]hildren should receive the same proportion of parental income after a dissolution as they would have received had the family remained intact." *Carr*, 600 N.E.2d at 946. Absent an evidentiary justification in the record and a finding by the trial court that a proportional obligation would be unfair, the Child Support Guidelines require that apportionment of educational expenses between the parents be roughly proportional to their share of income. *Id.*

[23] Here, the trial court found that Father "earns at least $3,249.00 per month," or $38,988 per year. Appellant's App. at 21. Father's financial declaration reported $0 income. Apparently, the trial court determined Father's income based on the evidence that his monthly expenses of $3249 were paid with his company's rental income. There was no evidence regarding his company's earnings. The evidence Mother submitted shows that she earns at least $72,436 per year, which does not include overtime. Petitioner's Ex. 6. Their combined yearly income is $111,424. Father earns 35% of the total income, and Mother earns 65%. Yet, the trial court ordered each parent to pay 50% of the balance remaining after Child's scholarships and other financial aid were applied. This does not comport with the Child Support Guidelines.

[24] However, the trial court's departure from the Child Support Guidelines may be explained by its finding that Father was voluntarily underemployed, from which it likely determined that Father's potential income was comparable to Mother's. Indiana Child Support Guideline 3(A)(3) states,

> If a court finds a parent is voluntarily unemployed or underemployed without just cause, child support shall be calculated based on a determination of potential income. A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community.

"Potential income may be determined if a parent has no income, or only means-tested income, and is capable of earning income or capable or earning more." Ind. Child Support Guideline 3(A)(3), cmt 2c. "But the Guidelines do

not require or encourage parents to make career decisions based strictly upon the size of potential paychecks, nor do the Guidelines require that parents work to their full economic potential." *Sandlin v. Sandlin*, 972 N.E.2d 371, 375 (Ind. Ct. App. 2012). "Obviously, a great deal of discretion will have to be used in this determination." Ind. Child Support Guideline 3(A)(3), cmt 2c.

[25] One purpose of potential income is to discourage a parent from taking a lower paying job to avoid the payment of significant support. *Id.* On some occasions, this Court has rephrased this principle as follows, "A trial court has wide discretion with regard to imputing income to ensure the child support obligor does not evade his or her support obligation." *Miller v. Sugden*, 849 N.E.2d 758, 761 (Ind. Ct. App. 2006), *trans. denied*; *see also Kondamuri v. Kondamuri*, 852 N.E.2d 939, 950 (Ind. Ct. App. 2006) ("The trial court has discretion to impute potential income to a parent if it is convinced the parent's underemployment 'has been contrived for the sole purpose of evading support obligations.'") (quoting *In re Marriage of Turner v. Turner*, 785 N.E.2d 259, 265 (Ind. Ct. App. 2003)); *Apter v. Ross*, 781 N.E.2d 744, 761 (Ind. Ct. App. 2003) ("With regards to imputing income, the trial court enjoys wide discretion to ensure the child support obligor does not evade his support obligation."), *trans. denied*. We caution that this rephrasing should not be interpreted to mean that potential income may not be imputed unless the court finds that the parent is avoiding the payment of significant child support. While the Guidelines clearly indicate that a parent's avoidance of child support is grounds for imputing potential income, it is not a necessary prerequisite. For example, the relevant

commentary states, "When a parent is unemployed by reason of involuntary layoff or job termination, it still may be appropriate to include an amount in gross income representing that parent's potential income." Ind. Child Support Guideline 3(A)(3), cmt 2c(4). Thus, it is within the trial court's discretion to impute potential income even under circumstances where avoiding child support is not the reason for a parent's unemployment.

[26] We also note that another panel of this Court has stated, "Where a parent is unemployed or underemployed for a legitimate purpose other than avoiding child support, there are no grounds for imputing potential income." *Trabucco v. Trabucco*, 944 N.E.2d 544, 550 (Ind. Ct. App. 2011) (citing *Kondamuri*, 852 N.E.2d at 950), *trans. denied*.[3] We believe that this statement is overbroad and is unsupported by the Guidelines. Indeed, our supreme court has emphasized, "While legitimate reasons may exist for a parent to leave one position and take a lower paying position other than to avoid child support obligations, this is a matter entrusted to the trial court and will be reversed only for an abuse of discretion." *Bojrab v. Bojrab*, 810 N.E.2d 1008, 1015 (Ind. 2004). The *Bojrab* court made this statement in the context of addressing the husband's argument that the trial court erred by declining to retroactively modify his child support and maintenance. The *Bojrab* court rejected the husband's challenge to the trial court's decision, based on the following reasoning:

---

[3] *Kondamuri* in turn cited *Lambert v. Lambert*, 839 N.E.2d 708 (Ind. Ct. App. 2005), *trans. granted* (2006), which our supreme court vacated. 861 N.E.2d 1176 (Ind. 2007).

> [T]he trial court found that the husband voluntarily left one position for another and that he could have remained at his prior position, that he would have taken financial measures to maintain the standard of living for his wife and children during the transition, and that he had the capacity to finance the support and maintenance during this time.

*Id. But see Abouhalkah v. Sharps*, 795 N.E.2d 488, 491 (Ind. Ct. App. 2003) (concluding that trial court erred in finding father voluntarily underemployed where employer moved his job to Minnesota, but he refused to move so that he could stay near his children and had been searching for comparable employment); *In re Paternity of E.M.P.*, 722 N.E.2d 349, 352 (Ind. Ct. App. 2000) (concluding that trial court erred in finding father voluntarily underemployed where father had been seeking job change due to rigorous physical nature of original job, which had caused physical injury, and new job had better benefits and would eventually produce more income).

[27] Here, the trial court found that Father "is voluntarily underemployed, as he has elected to serve as a caretaker for his mother rather than seek additional employment, or tend to the businesses that are currently paying his bills." Appellant's App. at 21. Father testified that his mother has ovarian cancer and that he is her primary caregiver, but there is no evidence regarding the level of care that she needed or what Father actually provided and no evidence that Father was unable to pursue additional employment or tend to his businesses. Moreover, although Father reported $0 income, his company paid all his living expenses. It was not unreasonable for the trial court to infer that he used his company funds for additional purchases. We conclude that the trial court did not abuse its discretion in finding that Father was voluntarily underemployed

and imputing potential income to him. *See Meredith v. Meredith*, 854 N.E.2d 942, 948 (Ind. Ct. App. 2006) (concluding that trial court properly imputed income for voluntary unemployment where father voluntarily took early retirement and was not seeking employment); *Williamson v. Williamson*, 825 N.E.2d 33, 44 (Ind. Ct. App. 2005) ("Given [f]ather's failure to submit a calculation of his gross receipts minus ordinary and necessary expenses resulting from his self-employment and his argument that he has no income, we cannot say that the trial court's imputation of income to [f]ather is clearly erroneous."); *Turner*, 785 N.E.2d at 265-66 (concluding that trial court properly imputed potential income where father worked part time even though he had skill and ability to work full time based on his prior work history); *Macher v. Macher*, 746 N.E.2d 120, 127 (Ind. Ct. App. 2001) (concluding that trial court properly imputed income where husband was self-employed in construction work and used time off to pursue hunting and fishing and company had offered him full-time employment with greater earning ability). Accordingly, we affirm the trial court's decision to require Father to pay half the remaining balance of Child's college expenses.

## Section 4 - The trial court abused its discretion by basing Father's college contribution on the cost of a private college.

[28] Father contends that the trial court abused its discretion by requiring him to assist with the costs of Child's attendance at a private university rather than a public university. Indiana Child Support Guideline 8(b) provides that "[t]he court may limit consideration of college expenses to the cost of state supported

colleges and universities or otherwise may require that the income level of the family and the achievement level of the child be sufficient to justify the expense of private school." In determining whether educational support should be limited to the cost of in-state, state-supported colleges, the trial court should balance "the advantages of the more expensive college in relation to the needs and abilities of the child with the increased hardship of the parent." *Hinesley-Petry*, 894 N.E.2d at 281.

[29] The annual cost to attend Butler is approximately $49,000 per year. Tr. at 25. Child's scholarships, grants, and financial aid covered about half that expense. *Id*. The actual cost of her first year at Butler was just under $23,000. *Id*. at 25-26; Petitioner's Ex. 4. In addition to Butler, Child applied to and was accepted by Indiana University, Ball State University, and DePauw University. She also received a financial aid package from each school. The annual cost to attend Ball State is approximately $22,000, and Child's scholarships, grants, and financial aid would have covered about half that cost or about $11,000. Tr. at 38. Thus, the actual annual cost for Child to attend Ball State would have been slightly less than half the actual cost to attend Butler.

[30] Child chose Butler because she thought that it offered "a better education and it's where [she] wanted to go." *Id*. at 33. However, there is no evidence that Butler offered a special curriculum. In addition, there is no evidence that Child discussed her decisionmaking process with Father. The evidence shows that she simply informed him that she was going to go to Butler and asked him to help pay for it. Accordingly, we conclude that the trial court's decision to order

Father to contribute to Child's college expenses based on the cost of a private university rather than a public university is against the logic and effect of the circumstances before it. *Cf. Million v. Swager*, 807 N.E.2d 140, 145-46 (Ind. Ct. App. 2004) (concluding that trial court did not err by ordering father to contribute toward child's education at Cornell University where it capped his contribution at $4000 per year, there was no evidence of expenses that child would incur at an in-state, public university, and father's complaint that the decision was made without him was misplaced because child tried to discuss decision with him but father failed to return child's calls and father admitted that he did not communicate with mother regarding child's upbringing). Therefore, we remand with instructions to order that Father's obligation toward Child's college expenses be based on the costs of a public university.

## Section 5 – The trial court erred by ordering Father to pay Child's college expenses incurred before Mother's motion for college expenses was filed.

[31] Father contends that the trial court erred by ordering him to contribute to Child's college expenses incurred before Mother's motion for college expenses was filed.[4] Child had already completed one semester of college before February 18, 2014, when Mother filed her motion for college expenses. Father

---

[4] Mother argues that Father waived this issue by failing to object to her request for college expenses. We disagree. Mother did not specifically request expenses that Child incurred before the motion for college expenses was filed. In other words, the issue was not presented with sufficient specificity that the failure to object results in waiver.

argues that a modification of child support cannot be applied to a date before the motion for modification was filed and likewise an award of college expenses cannot be applied to a date before the motion for college expenses was filed.

[32] With regard to child support, we observe that the "'general rule in Indiana is that retroactive modification of support payments is erroneous if the modification relates back to a date earlier than the filing of the petition to modify.'" *Sexton v. Sedlak*, 946 N.E.2d 1177, 1183-84 (Ind. Ct. App. 2011) (quoting *Becker v. Becker*, 902 N.E.2d 818, 820 (Ind. 2009)), *trans. denied*. Indiana Code Section 31-16-16-6(b) provides,

> A court with jurisdiction over a support order may modify an obligor's duty to pay a support payment that becomes due:
>> (1) after notice of the petition to modify the support order has been given either directly or through the appropriate agent to:
>>> (A) the obligee; or
>>> (B) if the obligee is the petitioner, the obligor; and
>> (2) before a final order concerning the petition for modification is entered.

[33] Thus, the trial court would not have had the authority to modify Father's child support obligation before February 18, 2014. *See Ogle v. Ogle*, 769 N.E.2d 644, 648 (Ind. Ct. App. 2002) ("'[O]nce funds have accrued to a child's benefit under a court order, the court may not annul them in a subsequent proceeding.'") (quoting *Nill v. Martin*, 686 N.E.2d 116, 118 (Ind. 1997)).

[34] In some circumstances, we have likened the payment of college expenses to child support. *See Vagenas v. Vagenas*, 879 N.E.2d 1155, 1159 (Ind. Ct. App.

2008) (concluding that payment of college expenses equates to payment of child support for purposes of determining whether father's payments toward child's college expenses in lieu of child support payments was in substantial compliance with child support order), *trans. denied*; *Borum v. Owens*, 852 N.E.2d 966, 969 (Ind. Ct. App. 2006) (noting that "[o]rders requiring payment of college expenses are modifiable because college expenses are in the nature of child support" for purposes of determining whether an order requiring payment of college expenses could be modified pursuant to Ind. Code § 31-16-8-1(1)). However, we are not persuaded that the bright-line rule of Section 31-16-16-6(b) should be extended to the *initial* order requiring payment of college expenses.

[35]     "[A] child support order and an educational support order are separate and distinct." *Knisely v. Forte*, 875 N.E.2d 335, 340 (Ind. Ct. App. 2007). The *Knisely* court made this observation in the context of discussing the factors to be considered in determining whether the trial court erred in apportioning college expenses. The *Knisely* court noted that "[e]ducational support orders must take into account the child's aptitude and ability; the child's reasonable ability to contribute to educational expenses through work, loans, and obtaining other sources of financial aid reasonably available to the child and each parent; and the ability of each parent to meet these expenses." *Id*. at 341. Thus, the considerations involved in determining an award of college expenses are not the same as those involved in determining child support. Furthermore, college costs and the child's ability to contribute to those costs will oftentimes be difficult to determine before a child starts school. For these reasons, we decline

to hold that an initial order requiring payment of college expenses can never be applied prior to the date of the motion for college expenses.[5]

[36]  Nevertheless, there are circumstances present in this case that lead us to conclude that retroactive application of Father's college contribution prior to February 18, 2014, is improper. Child began college in the fall of 2013, while she was still eighteen years old. Father's duty to pay child support did not terminate until Child became emancipated at age nineteen. *See* Ind. Code § 31-16-6-6(a) ("The duty to support a child under this chapter, which does not include support for educational needs, ceases when the child becomes nineteen."). Thus, Father's child support obligation remained in force during child's first semester. Child turned nineteen on February 21, 2014, just three days after Mother filed her motion. The trial court ordered Father to contribute to Child's fall 2013 college expenses, but he still had a duty to pay child support during that time.

[37]  Indiana Code Section 31-16-6-2(b) provides,

> If the court orders support for a child's educational expenses at a postsecondary educational institution under subsection (a), the court shall reduce other child support for that child that:
> > (1) is duplicated by the educational support order; and
> > (2) would otherwise be paid to the custodial parent.

---

[5] We do not suggest that Indiana Code Section 31-16-16-6(b) does not apply to the subsequent modification of a college expense order.

The Guidelines also provide,

> The impact of an award of post-secondary educational expenses is substantial upon the custodial and non-custodial parent and a reduction of the Basic Child Support Obligation attributable to the child in question will be required when the child resides on campus or otherwise is not with the custodial parent.

Ind. Child Support Guideline 8(b). Although a trial court has the authority to order college expenses and child support, "[w]hen both orders are entered, the Indiana Child Support Guidelines specifically require a reduction in child support for the time the child is living away from home for college." *Lovold*, 988 N.E.2d at 1152. The trial court's decision to order Father to contribute to Child's fall 2013 college expenses results in duplication of Father's child support payment. "Duplicative support and college expense orders should be avoided." *Stover v. Stover*, 645 N.E.2d 1109, 1110 (Ind. Ct. App. 1995) (citing *Carr*, 600 N.E.2d at 946). Therefore, we reverse the portion of the order that requires Father to pay a share of Child's college expenses incurred before Mother's motion was filed.

## Section 6 – The trial court did not abuse its discretion by ordering Father to pay $2000 of Mother's attorney's fees.

[38] Finally, Father argues that the trial court abused its discretion by ordering him to pay $2000 toward Mother's attorney's fees. The trial court ordered Father to pay a portion of Mother's attorney's fees "as a sanction for his contempt." Appellant's App. at 25. "The trial court has inherent authority to award

attorney fees for civil contempt." *Winslow*, 969 N.E.2d at 1093.[6] "No statutory sanction is needed as a court's power to enforce compliance with its orders and decrees duly entered is inherent." *Crowl v. Berryhill*, 678 N.E.2d 828, 831 (Ind. Ct. App. 1997). "Without regard to economic resources, once a party is found in contempt, the trial court has 'the inherent authority to compensate the aggrieved party for losses and damages resulting from another's contemptuous actions,'" including "the award of attorney's fees." *Scoleri v. Scoleri*, 766 N.E.2d 1211, 1222 (Ind. Ct. App. 2002) (quoting *Adler v. Adler*, 713 N.E.2d 348, 355 (Ind. Ct. App. 1999)). We review the trial court's ruling on a contempt petition for an abuse of discretion. *Topolski v. Topolski*, 742 N.E.2d 991, 994 (Ind. Ct. App. 2001). "When reviewing a contempt order, we will neither reweigh the evidence nor judge the credibility of witnesses." *Id*. We will affirm the trial court's decision unless it is against the logic and circumstances before it and we have a firm and definite belief that a mistake has been made. *Id*.

[39] Mother's attorney submitted an invoice for services rendered, and the total fees were $2902.56. Father contends that because he acknowledged that he was delinquent and did not challenge the amount of his child support arrearage, very little of Mother's attorney's fees were incurred in the maintenance of the contempt action, and therefore the $2000 sanction was unreasonable. Even though Father did not challenge his arrearage at the hearing, Mother's attorney

---

[6] Father mistakenly addresses this issue as though the trial court awarded attorney's fees pursuant to Indiana Code Section 31-16-11-1, which authorizes the court to order a party to pay the other party's court costs including attorney's fees in maintaining or defending an action for child support.

still had to file for contempt and prepare for the contempt hearing with no knowledge as to what Father's position would be. We cannot say that the $2000 sanction was unreasonable. Therefore, we affirm the trial court's order requiring Father to pay $2000 toward Mother's attorney's fees.

## Conclusion

We reject Father's contention that the trial court erred by failing to find that Child repudiated him. We affirm the trial court's decision to require Father to pay 50% of the remaining balance of Child's college expenses. Further, we affirm the trial court's order requiring Father to pay $2000 toward Mother's attorney's fees. We reverse that portion of the order basing Father's contribution to Child's college expenses on the cost of a private university and remand for Father's obligation to be based on the costs of a public university. We also reverse the portion of the order that requires Father to pay a share of Child's college expenses incurred before Mother's motion for college expenses was filed. We remand for the trial court to order Father to contribute to Child's college expenses consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

May, J., and Bradford, J., concur.