## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 24 2017, 6:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Garvin
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Michael H. Michmerhuizen
Barrett McNagny LLP
Fort Wayne, Indiana

Cornelius B. (Neil) Hayes
Hayes & Hayes
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| L.T.,<br>*Appellant-Petitioner,*<br><br>v.<br><br>E.T.,<br>*Appellee-Respondent* | August 24, 2017<br><br>Court of Appeals Case No.<br>44A03-1703-DR-485<br><br>Appeal from the LaGrange Circuit Court<br><br>The Honorable J. Scott VanDerbeck, Judge<br><br>Trial Court Cause No.<br>44C01-0506-DR-35 |

**Baker, Judge.**

[1]     L.T. (Mother) appeals the trial court's modification of the child support order between her and E.T. (Father). She argues that the trial court committed procedural errors when it (1) conducted summary proceedings and (2) adopted Father's proposed findings of fact and conclusions of law. She also argues that the trial court erred when it (1) considered Father's motion to modify child support; (2) considered her potential income; (3) treated Father as the custodial parent and ordered both parties to share the controlled expenses equally; (4) did not prorate the weekly health insurance premium paid for by Father; (5) calculated one child's "weeks at home"; and (6) transferred control of the 529 Plans to Father. Finding no error, we affirm.

## Facts

[2]     Father and Mother married on May 6, 1995. Two children were born of their marriage: H.T., born on August 9, 1997, and S.T., born on September 24, 1999. On December 6, 2002, Mother filed a petition for dissolution of marriage.

[3]     In 2004, the trial court granted the parties joint legal custody of their children and granted Mother physical custody. The trial court ordered Father to pay child support of $429 per week.

[4]     On April 26, 2006, following a motion to modify child custody filed by Father, the trial court modified child custody, granting sole legal custody to Father and ordering the parties to share equal parenting time. The trial court granted Father parenting time credit and modified his child support payments to $387

per week. In its order, the trial court noted that "both parties previously delegated their parental authority, *in loco parentis*" to "The Panel."[1] Appellant's App. Vol. II p. 92. The trial court found the following regarding the panel and guardian ad litem:

- Mother was treated for Munchausen Syndrome by Proxy.
- Mother's act of filing complaints against two panel members was self-serving and resulted in the children failing to have access to a professional psychotherapist.
- Mother's allegations of sexual misconduct by Father were unsubstantiated.

*Id.* at 97. Regarding the change of legal custody, the trial court found the following:

- Mother had undertaken acts to upset or interfere with the operation of the panel and the guardian ad litem;
- Following a court order requiring both parents to participate in individual psychotherapy, Father routinely participated in psychotherapy, whereas Mother attended only three sessions and at the time of the April 26, 2006, order, was not seeing a therapist.
- Mother attempted to unilaterally modify child visitation, which led H.T. to being frustrated and upset.
- Mother took the children on a family vacation that resulted in Father losing some of his court-ordered parenting time.
- When the children, then aged eight and six, are with Mother, they sleep in Mother's bed every night.
- Mother acted contrary to the court's prior order that she act in good faith and encourage the maximum relation of affection toward each parent.

---

[1] The record does not include information about the purpose of this panel or who served on it.

*Id.* at 100-101.

[5] On August 10, 2015, Father filed a motion to modify child support and a motion for an order on higher education. On October 5, 2016, Mother filed her opposition to Father's motions. A hearing took place on October 11, 2016, and the trial court issued its order on November 2, 2016. The trial court found as follows regarding Father's pending motion for modification of support:

- While Father's motions were pending, he continued to pay $387 per week in child support, even though changed circumstances of a substantial and continuing nature occurred that would justify a modification of child support.
- The changed circumstances were that H.T. left for college and turned 19 on August 9, 2016. As a matter of law, child support for H.T. ceased when she turned nineteen.
- Mother financially benefitted from the delay in the proceeding because she collected child support for two children at home, even though only one child was at home and the other was living on a college campus and was past the age of emancipation.

*Id.* at 38-39. Regarding the child support modification, the trial court found as follows:

- Father works as an anesthesiologist between 60-100 hours per week. Father's yearly income averaged to $410,241 over the course of three years, or $7,889.25 per week.
- Mother works part-time, by choice, as a nurse anesthetist for approximately fifteen hours per week. She earns $95 per hour, or a weekly income of $1,370.
- Mother worked part-time during the marriage; she continued to work part-time after the trial court divided the children's time equally between the parties, despite having more free time.

- Mother is voluntarily underemployed. By her own admission, she is capable of earning $175,000 annually. Mother could work additional hours, but chooses not to, citing an inability to be a good mother, an inability to give "life lessons," and a negative impact to mental health.
- Mother's potential annual income is $175,000, or $3,365 per week.

*Id.* at 39-40, 42. The trial court continued with the following findings:

- Controlled expenses were not previously specifically allocated between the parties. The parties traditionally shared in the controlled expenses of the children, even though Father has paid child support. The trial court ordered that, based upon the equal sharing of the children's time, the controlled expenses be equally shared, with the exception of uninsured healthcare expense.
- Father provided evidence of insurance coverage for the children that cost him an additional $269 per month, or $62 per week; the trial court found that Father's calculation was correct, and that the cost of health insurance coverage for H.T. and S.T. was $62 per week.
- During the summer, when H.T. was not at school, her time was divided equally between the parties. A reasonable summer break is ten weeks at home. The child support obligation worksheet compensated Mother for the five weeks H.T. resided with her.
- Child support should be retroactively modified on August 20, 2015, when H.T. went to Purdue, and again on August 9, 2016, when H.T. turned nineteen.

*Id.* at 41-43. The trial court entered the following judgment:

- Father would pay child support to Mother.
- Retroactively effective August 20, 2015, Father would pay child support of $128 per week for two children.
- Retroactively effective August 9, 2016, when H.T. turned 19, Father would pay child support of $137 per week for S.T.
- Because Father overpaid child support from August 20, 2015, to August 9, 2016, Mother would repay Father $13,134, the amount he overpaid during this time.

- Because Father overpaid child support from August 9, 2016, to the date of the hearing on October 11, 2016, Mother would repay Father $2,215, the amount he overpaid during this time, along with any further overpayment made subsequent to the hearing date.
- The parties would use all existing higher education plans, including existing 529 Plans. All 529 Plans would be placed under Father's control.

*Id.* at 44-45.

[6] On November 17, 2016, Mother filed a motion to correct error. On January 3, 2017, Father filed a response to Mother's motion. The trial court held a hearing on January 26, 2017. On February 20, 2017, it denied Mother's motion and issued its order, which provided as follows:

- Mother would pay the first $427.32 of the ongoing uninsured medical, dental, optical, pharmaceutical, ophthalmologist, and orthodontic expenses; regarding any remaining costs, Father would pay 69% and Mother would pay 31%.
- In its November 2, 2016, order, the trial court relied on its April 26, 2006, order, including findings of fact about Mother's interference with proceedings; Father's participation in psychotherapy and Mother's lack of participation; Mother's attempts to unilaterally modify child visitation and the effect of those attempts on H.T.; Father's enrollment of the children in wholesome activities; and Mother's false allegations about Father's inappropriate behavior with the children.

*Id.* at 54-55. Mother now appeals.

# Discussion and Decision

## I.    Standard of Review

A trial court's calculation of child support is presumptively valid. *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008). Child support calculations are made utilizing the income shares model set forth in the Indiana Child Support Guidelines. *Sandlin v. Sandlin*, 972 N.E.2d 371, 374 (Ind. Ct. App. 2012). The Guidelines apportion the cost of supporting children between the parents according to their means, on the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family had remained intact. *Id.* The trial court is vested with broad discretion in making child support determinations. *Id.* We reverse a decision regarding child support only if it is clearly erroneous or contrary to law. *Young*, 891 N.E.2d at 1047. We do not reweigh the evidence and consider only the evidence most favorable to the judgment. *Saalfrank v. Saalfrank*, 899 N.E.2d 671, 674 (Ind. Ct. App. 2008).

## II.  Procedural Matters

## A.  Summary Proceeding

Mother asserts that the trial court improperly treated the October 11, 2016, hearing as a summary proceeding. Our Supreme Court has recently explained that

> [s]ummary proceedings function to efficiently resolve disputes by allowing parties and the court to forego the use of formal rules of

procedure and evidence and instead allow the court to base its findings and conclusions upon the arguments of counsel and limited evidence. Summary proceedings commonly take place when parties are not disputing essential facts, but rather the legal outcome compelled by those facts.

*Bogner v. Bogner*, 29 N.E.3d 733, 739 (Ind. 2015). When properly agreed to, summary proceedings can minimize the negative impact on children in matters of custody and parenting time, but they "may be less appropriate where the parties are vigorously contesting every facet of the process and appear incapable of approaching these decisions in a civil or cooperative manner." *Id.*

[9] Both parties were present at the October 11, 2016, hearing. At the beginning of the hearing, the trial court requested opening statements. Father gave one by counsel, as did Mother, who was proceeding pro se. After the statements, the following exchange took place:

> Father's Counsel: . . . Would it be easier, Your Honor, uh, for us to do this in a summary fashion and then swear the parties?
>
> The Court: I – well I welcome that. Try to go as far as you can. You each affirm you'll tell the truth today, so help you God?
>
> Father: I do.
>
> Mother: I do.

Tr. p. 11. At no point did Mother object to the summary nature of the proceedings. She also did not object to the exhibits offered by Father. Mother

argues that she was not advised about the implications of conducting the hearing as a summary proceeding, but Mother's status as a pro se litigant at the hearing does not make ignorance of the law a valid argument on appeal. *See Basic v. Amouri*, 58 N.E.3d 980, 983-84 (Ind. Ct. App. 2016) (noting that pro se litigants are held to the same standards as licensed attorneys, are bound to follow the established rules of procedure, and must be prepared to accept the consequences of their failure to do so). If Mother did not want to proceed in a summary fashion, that objection should have been raised at the time of the hearing. *See Bogner*, 29 N.E.3d at 741.

[10] At the hearing, the trial court acknowledged that Mother was proceeding pro se and would "take liberties" because Mother did not have an attorney. Tr. p. 5. Toward the beginning of the hearing, the trial court gave Mother ample opportunity to raise the issues she wanted the trial court to consider. As it continued, the trial court gave Mother ample opportunity to provide other relevant information regarding the issues in dispute. Finally, the trial court allowed Mother to make two closing arguments. In short, Mother fails to show how she was prejudiced by the summary nature of the proceedings. Mother's argument regarding the summary proceeding is unavailing.[2]

---

[2] Although we find that a summary proceeding was properly conducted, we remind the trial court that our Supreme Court has outlined best practices for summary proceedings, which include establishing on the record: "1) affirmative agreement from the attorneys that proceedings will be conducted summarily, for those represented by counsel; 2) affirmative agreement by both clients or unrepresented litigants to summary proceedings; 3) opportunity for both parties to add any other relevant information regarding the issues in dispute before the summary proceeding is concluded or to affirm the arguments made by counsel; and 4) an advisement in advance of the hearing that either party is free to object to the form of the proceeding and

# B. Trial Court's Findings and Conclusions

Mother also takes issue with the trial court's November 2, 2016, order, which, she contends, adopts Father's proposed findings of fact and conclusions of law "essentially verbatim." Appellant's Br. p. 25.

In its order, the trial court adopted verbatim many but not all of Father's proposed findings. *See* Appellant's App. Vol. II p. 37-45, 139-148. Trial Rule 52(C) encourages trial courts to request that parties submit proposed findings of fact and conclusions of law and it is not uncommon or per se improper for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party. *Clark v. Crowe*, 778 N.E.2d 835, 841 n.3 (Ind. Ct. App. 2002). Our Supreme Court has noted that the practice of accepting verbatim a party's proposed findings of fact "weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court." *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 273 n.1 (Ind. 2003). However, because the trial courts of this state are faced with an enormous volume of cases and they prioritize the need to keep the docket moving, the practice of adopting a party's proposed findings is not prohibited. *Prowell v. State*, 741 N.E.2d 704, 708 (Ind. 2001). Thus, although we by no means encourage the wholesale adoption of a party's proposed findings and conclusions, the critical inquiry is whether such

---

request a full evidentiary hearing, upon which formal rules of evidence and procedure will be observed." *Bogner*, 29 N.E.3d at 743.

findings, as adopted by the court, are clearly erroneous. *In re Marriage of Nickels*, 834 N.E.2d 1091, 1096 (Ind. Ct. App. 2005).

[13] Initially, we note that while Mother argues that the trial court "adopts verbatim proposed findings and conclusions for issues never raised by [Father], never supported by evidence, and never argued or mentioned at the hearing[,]" she fails to specify even one finding of fact or conclusion of law that was not raised before the trial court, not supported by evidence, or not argued at the hearing. Second, the trial court did not adopt the entirety of Father's proposed findings and conclusions. Specifically, the trial court did not adopt Father's proposed division of attorney fees to the benefit of Mother. The trial court consolidated at least two of Father's proposed findings regarding Mother's potential income. The trial court also made multiple grammatical edits to Father's proposed findings and conclusions. We find no error with the trial court's adoption of many of Father's proposed findings and conclusions.

# III. Child Support

## A. Father's Motion to Modify

[14] Mother argues that the trial court erred in modifying Father's child support even though his motion did not satisfy the requirements of Indiana Code section 31-16-8-1. This statute provides that modification of an order with respect to child support may be made only (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or (2) upon a showing that a party has been ordered to pay an amount in child

support that differs by more than twenty percent from the amount that would be ordered by applying the child support guidelines, and the order requested to be modified was issued at least twelve months before the petition requesting modification was filed. I.C. § 31-16-8-1(b).

[15] Specifically, Mother argues that Father failed to show that he had been ordered to pay an amount in child support that differed by more than twenty percent from the amount that would be ordered by applying the child support guidelines. Even if this argument were persuasive, Mother fails to correctly read the statute, which provides that a modification may be made *either* upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable, *or* upon a showing that a party has been ordered to pay an amount that differs by more than twenty percent from the amount that would be ordered by applying the child support guidelines.

[16] In this case, Father's motion for modification of child support clearly shows changed circumstances so substantial and continuing as to make the terms of his child support payments unreasonable. While Father's motion was pending, H.T. started college and turned nineteen, thereby making her emancipated as a matter of law. *See* Ind. Code § 31-16-6-6(a) ("The duty to support a child under this chapter, which does not include support for educational needs, ceases when the child becomes nineteen (19) years of age").

[17] Nonetheless, Mother contends that Father's motion for modification should not succeed because the changed circumstances do not make Father's child support

payments unreasonable. She reasons that, based on her own calculations, a recalculation of Father's child support payments would lead to a negligible increase in Father's payments—and that, in light of the parties' incomes and amount of support provided, a negligible increase cannot make Father's payments unreasonable. Mother does not cite any authority to support this distinctive line of reasoning, nor do we find any. Rather, this Court has found that emancipation necessarily warrants modification of child support. *See, e.g.*, *Patton v. Patton*, 48 N.E.3d 17, 23 (Ind. Ct. App. 2015) (reducing Father's weekly child support payment from $160 to $136.42 following the emancipation of one of his three children). The trial court did not err in considering Father's motion to modify child support.

## B. Indiana Child Support Guidelines

[18] Mother contends that the trial court failed to follow the Indiana Child Support Guidelines in determining Father's support obligation. Specifically, she asserts that the trial court did not make the findings required under Child Support Rule 3.

[19] Our Supreme Court has recently discussed the role of the Indiana Child Support Guidelines:

> The Indiana Child Support Guidelines serve three objectives: 1) establish an appropriate level of support for children, based on each parent's ability to contribute to that support; 2) increase consistency in support levels for those in similar circumstances; and 3) improve efficiency by encouraging settlements and giving both the court and the parties guidelines for setting awards. Ind.

Child Supp. G. 1. To reach these goals, child support is calculated under the Guidelines "as the share of each parent's income estimated to have been spent on the child if the parents and child were living in an intact household." *Id.* However, the support award under the Guidelines is not binding upon the parties or the court. Rather, "[i]f the court concludes from the evidence in a particular case that the amount of the award reached through application of the guidelines would be unjust, the court shall enter a written finding articulating the factual circumstances supporting that conclusion." Ind. Child Supp. G. Supp. R. 3. However, the findings required "need not be as formal as Findings of Fact and Conclusions of Law; the finding need only articulate the judge's reasoning." Ind. Child Supp. G. 1 Cmt. Furthermore, the "Guidelines are not immutable, black letter law," but provide "room for flexibility." *Id.*

*Bogner*, 29 N.E.3d at 738.

[20] Here, the trial court's February 20, 2017, order explains that it relied on the findings of fact from its April 26, 2006, order to justify its child support modification calculation. In that 2006 order, the trial court included findings of fact about Mother's interference with proceedings; Father's participation in psychotherapy and Mother's lack of participation; Mother's attempts to unilaterally modify child visitation and the effect of those attempts on H.T.; Father's enrollment of the children in wholesome activities; and Mother's false allegations about Father's inappropriate behavior with the children. We find that the trial court's order's reference to these findings of fact sufficiently articulates the trial court's reasoning for its award calculation. Therefore, we find no error.

# C. Impution of Income to Mother

[21] Mother argues that the trial court erred in attributing potential income to her. The Guidelines provide as follows for potential income:

> If a court finds a parent is voluntarily unemployed or underemployed without just cause, child support shall be calculated based on a determination of potential income. A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community.

Ind. Child Support Guideline 3(A)(3). The Commentary to this Guideline explains that

> When a parent has some history of working and is capable of entering the work force, but *without just cause voluntarily* fails . . . to be employed in a capacity in keeping with his or her capabilities, such a parent's potential income shall be included in the gross income of that parent. . . . Discretion must be exercised on an individual case basis to determine whether under the circumstances there is just cause to attribute potential income to a particular unemployed or underemployed parent.

Child Supp. G. 3(A), Commentary 2(c)(2) (emphasis added). A trial court may use its discretion "to impute potential income even under circumstances where avoiding child support is not the reason for a parent's unemployment." *In re Paternity of Pickett*, 44 N.E.3d 756, 766 (Ind. Ct. App. 2015).

[22] Here, the trial court heard evidence indicating that Mother has the ability and opportunity to work full-time but chooses to work part-time. She testified that

My boss has gone with me through this divorce and he has molded my schedule around my daughters. . . . So my boss created this, uh, this position for me that I can start at 8 a.m. on the days I have my daughters and I can leave at 2:30 to pick them up after school. Now, the risks of this is I don't have predictable hours. He can cancel me the night before. And I've taken this risk because it is very important for me to be around my daughters. . . . My job quite frankly is very stressful. . . . It's a very fast paced environment and to work fifty hours a week is, would be impossible for me to be a good parent as well. . . . [The job my] boss has created for me is a blessing for my, for my life and for my children's lives. And I'm asking to just maintain it for two more years. [S.T.] will be emancipated, uh, one month after she leaves for college.

Tr. p. 24-25. The trial court also heard evidence that H.T. is away at college, that Father and Mother share physical custody of S.T., and that S.T. is in Mother's care for only half the year. The trial court imputed income to Mother that she admitted she could earn if she were employed full-time in her same position with her same employer. *Compare with Salser v. Salser*, 75 N.E.3d 555, 561 (Ind. Ct. App. 2017) (finding that the trial court's decision to assign potential income to Mother was clearly erroneous because the determination of potential income would effectively force Mother to follow a career path she did not want, including leaving her current medical practice and seeking employment in another kind of medical practice).

[23] Mother also contends that the trial court failed to make a specific finding that she was underemployed without just cause. However, Mother does not provide authority for her contention that the trial court was required to make a specific

finding on this point. The trial court found that Mother is working 14-15 hours a week in order to parent her children, one of whom is already in college and emancipated, and one of whom is a teenager who is with her only half of the year; these facts are sufficient articulation of the basis of its determination that Mother was underemployed without just cause.

[24] Mother further contends that the trial court had no basis to discount her argument that working part-time provided her with mental health benefits. Yet Mother offered no evidence beyond her own testimony that her work is "fast-paced" and "stressful" to support her contention that full-time employment would be detrimental to her mental health. Tr. p. 25. Mother also contends that her decision to work part-time allows her to parent her children. True as that may be, she fails to recognize that H.T. is away at college in another city, and S.T. resides with Mother for only half the year. Moreover, on appeal, Mother fails to present evidence of what her parenting actually involves. *See In re Paternity of Pickett*, 44 N.E.3d 756, 767 (Ind. Ct. App. 2015) (finding that Father was voluntarily underemployed because, although he was serving as his mother's primary caregiver, there was no evidence regarding the level of care she needed or what care Father actually provided).

[25] In light of these facts, the trial court did not err in finding that Mother is voluntarily underemployed without just cause and in imputing income to her.

# D. Custodial/Controlled Expense Parent

[26] Mother argues that the trial court erred in determining Father to be the custodial and controlled expense parent.

[27] The Commentary to Indiana Child Support Guideline 6 defines "controlled expenses" as follows:

> This type of expense for the child(ren) is typically paid by the custodial parent and is not transferred or duplicated. Controlled expenses are items like clothing, education, school books and supplies, ordinary uninsured health care and personal care. . . . "Education" expenses include ordinary costs assessed to all students, such as textbook rental, laboratory fees, and lunches, which should be paid by the custodial parent. . . .
>
> The controlled expenses account for 15% of the cost of raising the child. The parenting time credit is based on the more time the parents share, the more expenses are duplicated and transferred. The controlled expenses are not shared and remain with the parent that does not get the parenting time credit. Controlled expenses are generally not a consideration unless there is equal parenting time. These categories of expenses are not pertinent for litigation. They are presented only to explain the factors used in developing the parenting time credit formula. . . .

[28] Mother argues that the November 2, 2016, order treats Father as the custodial parent for the first time for purposes of calculating retroactive and prospective support, which, she contends, is a change from the prior fourteen years of calculations and significantly benefits Father. In support of this argument, Mother asserts that the judgment requires her "to pay the vast majority of

controlled expenses, including all of the ordinary uninsured medical expenses and 50% of all other controlled expenses." Appellant's Br. p. 39.

[29] As for the controlled expenses, initially we note that our Supreme Court amended the Guidelines effective January 1, 2010; the amended Guidelines use the term "controlled expenses" for the first time. The November 2, 2016, order was the first modification of the parties' child support since the 2010 amendments to the Guidelines, and therefore the first time that the trial court would have considered "controlled expenses" in the parties' child support plan. This chronology explains this particular change from the parties' prior 2006 order.

[30] The November 2, 2016, order explicitly contradicts Mother's arguments regarding controlled expenses. Mother argues that she is required to pay the vast majority of controlled expenses; however, the order states that Mother and Father are each to pay half of the controlled expenses. Mother argues that she is required to pay all of the ordinary uninsured medical expenses, but the corrected February 20, 2017, order required Mother to pay only the first $427.32 of uninsured medical expenses, with Father paying 69% and Mother paying 31% of the remaining expenses.

[31] Mother contends that items she paid for, including cell phone service, gym memberships for the children, and one $10,000 vehicle for H.T., are all controlled expenses. Although Father is willing to agree that cell phone service and gym memberships are controlled expenses, *see* Appellee's Br. p. 39, we find

that none of these items constitute controlled expenses. Under the Commentary to Child Support Guideline 6, controlled expenses include everyday, ordinary expenses for a child's well-being and educational needs. While cell phones, gym memberships, and a vehicle may make life more enjoyable for the children, we cannot say these items are everyday, ordinary expenses required for their well-being and education, but are instead optional in nature.

[32] As for the trial court's determination that Father is the custodial parent, Mother's argument seems to turn on the fact that "[c]hanging the custodial parent to [Father] saves him even more money." Appellant's Br. p. 39. We are unpersuaded by this argument; indeed, it seems more focused on the amount of money that Mother could receive from Father than with the children's actual financial needs. Father, as the custodial parent, is paying for half of the children's controlled expenses, for their health insurance, and for a proportionate share of their private school tuition and uninsured health care. He continued to pay child support for two children long after H.T. left for college and was emancipated. The record shows that Father paid a nearly five-thousand dollar bill for H.T.'s orthodontic treatment without assistance from Mother, despite the 2006 order controlling how the parties were to share this kind of expense. Considering that nothing in the record suggests that Father has done anything but financially provide for his children to the best of his ability, we find Mother's implication that Father, in becoming the custodial

parent, is trying to save money, to be outlandish and not based on a rational view of the parties' situation.

[33] Mother's argument regarding the trial court's designation of Father as the custodial parent and the controlled expenses is unavailing.

## E.  Weekly Health Insurance Premium

[34] Mother argues that the trial court erred by giving Father a credit for a health insurance premium even though the trial court did not prorate the cost of Father's health insurance premium.

[35] The Commentary to Child Support Guideline 3E provides:

> The weekly costs of health insurance premiums only for the child(ren) should be added to the basic obligation so as to apportion that cost between the parents.  The parent who actually pays that cost then receives a credit towards his or her child support obligation on Line 7 of the Worksheet. . . .  Only that portion of the cost actually paid by a parent is added to the basic obligation.  If coverage is provided without cost to the parent(s), then zero should be entered as the amount.  If health insurance coverage is provided through an employer, only the child(ren)'s portion should be added.  In determining the amount to be added, only the amount of the insurance cost attributable to the child(ren) subject of the child support order shall be included, such as the difference between the cost of insuring a single party versus the cost of family coverage.  In circumstances where coverage is applicable to persons other than the child(ren) subject of the child support order, such as other child(ren) and/or a subsequent spouse, the total cost of the insurance premium shall be prorated by the number of persons covered to determine a per person cost.

[36] The trial court found that Father's health insurance premiums cost him $338 per month, with $269 of that monthly amount providing coverage for the children, or $62 per week for H.T. and S.T. The trial court stated that Father's calculation for this amount was correct. Appellant's App. Vol. II p. 41.

[37] Mother argues that Father's calculations were erroneous, but Mother fails to provide a record of those calculations for us to review. *See generally* Appellant's App Vol. II. As the appellant, Mother bears the burden of providing a full record for appeal. Without it, we cannot effectively review the trial court's judgment. *See, e.g.*, *Finke v. N. Ind. Pub. Serv. Co.*, 862 N.E.2d 266, 272 (Ind. Ct. App. 2006) (holding that appellant bears the burden of presenting a complete record with respect to the issues raised on appeal and that we "cannot review a claim . . . when the appellant does not include in the record all the evidence" relevant to that claim). Therefore, this argument is unavailing.

## F. H.T.'s Weeks at Home

[38] Next, Mother argues that the trial court erred in calculating the number of weeks H.T. lives at home, asserting that the trial court considered a reasonable summer break to be ten weeks at home, whereas H.T. was home from college for seventeen weeks. Yet Mother concedes that a change in the number of weeks home benefits the custodial/controlled expense parent, who, in this case, is Father. Mother contends that she is seeking child support calculated consistent with the Guidelines so that the children receive the support to which they are entitled, yet she concedes that the change in weeks at home would

reduce Father's child support obligation, a change contrary to her argument on appeal. We decline to find error on the trial court's calculation.

## G. 529 Plans

[39] Mother contends that the trial court erred in transferring control of the parties' 529 Plans to Father. She states that the trial court did not have the ability to address the issue of 529 Plans because the issue was not raised before the trial court and that "[t]here was nothing to alert [Mother] that the Trial Court would consider transferring control of the 529 Plans held by her to [Father]." Appellant's Br. p. 53.

[40] We disagree. At the October 11, 2016, hearing, Father's counsel asked the court to transfer control of the 529 Plans to Father. Father's counsel argued

> [Father] has been paying by himself out of his 529, uh, planning for the benefit of [H.T.] down at West Lafayette, Your Honor. Uh, the parties, uh, during the marriage set aside money and [H.T.] is requesting that the court because of this difficulty, uh, and to be, have it be, uh, (indiscernible) so that [Mother] does not cherry-pick what she wants to pay and what she doesn't want to pay. Is that [Father] be the, uh, caretaker of the 529s. They were in place, uh, there'd have to be a transfer and it'd be tax free totally, uh, obviously, a lateral movement, not - not unlike a QUADRO [sic] from [Mother's] name to [Father], so they can take care of the girls, uh, costs as they come due. [Mother], uh, [Father] will testify takes issue with things.

Tr. p. 18. During the hearing, Mother did not object to Father raising this issue, nor did she present a counter-argument to Father's request. *See Glover v.*

*Torrence*, 723 N.E.2d 924, 935 (finding that once the issue is raised, "the party opposing the evidence must object or the issue supported by the evidence will impliedly be consented to having been tried by that party"). The record shows that the issue of the control of the 529 Plans was squarely before the trial court. Mother's argument is unavailing.

[41] The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.