Susan HINESLEY–PETRY,
Appellant–Petitioner,

v.

Thomas S. PETRY, Appellee–
Respondent.

No. 79A05–0803–CV–125.

Court of Appeals of Indiana.

Oct. 7, 2008.

Rehearing Denied Dec. 2, 2008.

James E. Ayers, Wernle, Ristine & Ayers, Crawfordsville, IN, Attorney for Appellant.

Gregg S. Theobald, Lafayette, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Susan Hinesley–Petry ("Wife") appeals the trial court's denial of her motion to correct error filed subsequent to its order granting the amended verified petition to modify child support and petition for emancipation filed by Thomas S. Petry

("Husband"). We affirm in part and remand in part.

## Issues

We restate the issues as follows:

I. Did the trial court err in finding that the Uniform Gifts to Minors Act ("UGMA") accounts were sufficient to cover 2007–2008 educational expenses for both children?

II. Did the trial court err in limiting the parents' educational expense obligations to the younger child to those that would be incurred at an in-state, state-supported college?

III. Did the trial court err in not entering an order regarding the allocation of educational expenses for the older child for the 2007–2008 academic year?

IV. Did the trial court abuse its discretion in not including as an educational expense costs incurred by a twenty-one-year-old child during college breaks?

## Facts and Procedural History

On December 10, 1996, the trial court entered a dissolution decree and property settlement ending Husband and Wife's marriage. The couple had two children: Abigail, born May 7, 1986, and Samantha, born August 14, 1989. Wife received legal and physical custody of the children, and Husband received visitation rights. As part of the property settlement, Husband placed $50,000.00 per child into separate accounts pursuant to the UGMA, to be used toward each child's college education. The property settlement further provided that each child's contribution to her own college education would be determined at a later date.

In the fall of 2004, Abigail enrolled at St. John's College in New Mexico, at an annual cost of approximately $50,000.00. On October 18, 2005, Husband and Wife entered into an agreed order regarding Abigail's college expenses for the 2005–2006 academic year. Pursuant to the order, Abigail was obligated to pay the first 20% of her college expenses. Wife was obligated to pay 10% of the remaining 80% (8% of the total), up to $3,200.00 per academic year, and Husband was obligated to pay the remaining 72% of the total. Husband's obligation was calculated based on his 2005 gross income of $355,000.00. The order was silent regarding the allocation of any expenses associated with Samantha's future education.

In 2007, Husband's gross income fell to approximately $200,000.00. On August 16, 2007, he filed a verified petition to modify child support, and on October 30, 2007, he filed an amended verified petition to modify child support and a petition for emancipation. By agreement of counsel, the trial court conducted a summary hearing on Husband's petitions on November 20, 2007.

At the time of the hearing, Abigail was a twenty-one-year-old senior at St. John's College, with no money left in her UGMA account. Samantha was an eighteen-year-old freshman at Columbia College in Chicago. As of October 31, 2007, her UGMA account contained a balance of $29,774.63. Appellant's App. at 56.

The trial court entered its ruling on November 26, 2007. Its findings included the following:

> 5. The Uniform Gifts to Minors Accounts previously established for the education of the parties' daughters will be sufficient to provide the bulk of the cost of the remainder of the 2007–2008 school year for both daughters.
>
> . . . .
>
> 8. Abigail Elizabeth Petry, being over the age of 21, is emancipated and

the former husband's obligation to pay support is terminated except for educational expenses.

. . . .

14. After the conclusion of the 2007–2008 school year, the former husband shall be responsible for seventy-two percent (72%), the former wife shall be responsible for eight (8%), and Samantha May Petry shall be responsible for twenty percent (20%) of the cost of tuition, books, and room and board for an in-state, state supported college education for Samantha May Petry.

Appellant's App. at 12–13.

On December 27, 2007, Wife filed a motion to correct error. The trial court denied her motion on January 7, 2008, and this appeal ensued. Additional facts will be provided as necessary.

## Discussion and Decision

### I. UGMA Accounts

■ Wife asserts that the trial court erred in finding that Abigail's UGMA account contained funds sufficient to pay the majority of her 2007–2008 college expenses. When a trial court issues findings of fact and conclusions thereon, we review as follows:

First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made.

*Carmichael v. Siegel,* 754 N.E.2d 619, 625 (Ind.Ct.App.2001) (citations omitted).

Here, the trial court entered a finding that the daughters' UGMA accounts would be sufficient to cover the bulk of their college expenses for the 2007–2008 academic year. Appellant's App. at 12. Both parties agree that this finding is erroneous with regard to Abigail. The record indicates that at the time of the November 2007 hearing, Abigail's account was totally depleted. *Id.* at 27. Moreover, the original property settlement agreement established two separate UGMA funds, one for each daughter. The UGMA prohibits the usage of one daughter's funds to pay the expenses of the other. *See* Ind.Code § 30-2-8.5-25 ("A transfer may be made only for one (1) minor"). Therefore, the finding that the UGMA accounts contained funds sufficient to pay the bulk of the daughters' 2007–2008 educational expenses is clearly erroneous as to Abigail.

### II. Limitation of Obligation to In-State, State–Supported College

■ Wife contends that the trial court erred by limiting the apportionment order for Samantha's college expenses to an amount commensurate with the cost of an in-state, state-supported education. When we review a challenge to an order apportioning college expenses, we apply a clearly erroneous standard. *Carson v. Carson,* 875 N.E.2d 484, 485–86 (Ind.Ct.App.2007). Clear error occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it and we are left with a firm conviction that a mistake has been made. *Id.* at 486.

Under Indiana law, there is no absolute legal duty on the part of parents to provide a college education for their children. However, the statutory authorization for the divorce court to order either

or both parents to pay sums toward their child's college education constitutes a reasonable manner in which to enforce the expectation that most families would encourage their qualified children to pursue a college education consistent with individual family values. In determining whether to order either or both parents to pay sums toward their child's college education, the court must consider whether and to what extent the parents, if still married, would have contributed to the child's college expenses.

*McKay v. McKay*, 644 N.E.2d 164, 166 (Ind.Ct.App.1994) (citations omitted).

The purpose of a[n] [educational] support order is the welfare of the child and not the punishment of the [noncustodial parent]. It must be fair, not confiscatory in amount and intended to provide a reasonable allowance for support, considering the property, income and earning capacity of the [noncustodial parent], and the station of life of the family. It is within the discretion of the trial court to determine under all the circumstances what is just and equitable to the child and to the [noncustodial parent].

*Rohn v. Thuma*, 408 N.E.2d 578, 582–83 (Ind.Ct.App.1980) (citation and quotation marks omitted). In *Rohn*, we rejected a bright-line rule that would limit children to educational support commensurate with instate, state-supported colleges. Rather, we held that these cases are more properly determined on a case-by-case basis, with

the trial court balancing the advantages of the more expensive college in relation to the needs and abilities of the child with the increased hardship on the parent. *Id.* at 583.

Indiana Code Section 31–16–6–2 provides in pertinent part,

(a) The child support order or an educational support order may also include, where appropriate:

(1) amounts for the child's education . . . at postsecondary educational institutions, taking into account:

(A) the child's aptitude and ability; [1]

(B) the child's reasonable ability to contribute to educational expenses through:

(i) work;

(ii) obtaining loans; and

(iii) obtaining other sources of financial aid reasonably available to the child and each parent; and

(C) *the ability of each parent to meet these expenses* [.]

(Emphasis added.)

Here, Husband sought and received a modification based on a significant reduction in his gross income from $355,000.00 in 2005 to $195,098.63 in 2007. Appellant's App. at 12. At the time of the hearing, his daughters were attending private colleges whose combined total cost was nearly $86,000.00 per year.[2] The trial court entered the following finding regarding the daughters' chosen colleges: "St. John's

---

1. To the extent that Wife argues that Samantha's musical abilities required the unique curriculum offered at Columbia College, we find no evidence in the record that Samantha could not have received a comparable education through Indiana University's highly acclaimed music program.

2. The dissent focuses on the fact that Husband's obligation to Abigail was nearly complete as of the time of the hearing, as she was a senior in college at that time. We recognize

that, on its face, Husband's obligation regarding Abigail's education appears limited in duration. However, the record indicates that Husband took out a second mortgage to help pay Abigail's private school tuition. Appellant's App. at 29. To the extent that the second mortgage still carries a balance, the practical effect is that Husband is still, albeit indirectly, paying for Abigail's private education.

and Columbia colleges are private out-of-state schools and the cost of education at those schools far exceeds the cost of an in-state college education in Indiana." *Id.* While Husband was experiencing a significant decrease in his ability to meet Samantha's expenses, the record does not reveal any efforts by Wife or Samantha to obtain student loans or scholarships or to secure a job to help meet Samantha's educational expenses. We will not place a noncustodial parent in a position of undue financial hardship by forcing him or her to underwrite a Cadillac education on a Kia budget.

Here, Samantha's UGMA account was used to fund her freshman year (2007–2008). The trial court entered an educational support order for her remaining academic years:

> After the conclusion of the 2007–2008 school year, the former husband shall be responsible for seventy-two percent (72%), the former wife shall be responsible for eight (8%), and Samantha May Petry shall be responsible for twenty percent (20%) of the cost of tuition, books, and room and board *for an in-state, state supported college education* for Samantha May Petry.

Appellant's App. at 13 (emphasis added). To the extent Wife argues that the italicized language amounts to an order to withdraw Samantha from her private college and enroll her at a state college, we disagree. Instead, we conclude that the italicized language amounts to a limitation on Husband's and Wife's educational support obligations.

Wife also argues that Husband could reasonably read such language as requiring that he owes educational support *only if* Samantha attends an in-state, state-supported college. However, Husband admits in his brief that his educational support obligation is not subject to such a condition. Appellee's Br. at 15.

The dissent focuses on Husband's acquiescence in his daughters' decisions to attend private out-of-state colleges as an indication of "the family's individual educational values." *McKay,* 644 N.E.2d at 166. However, we note that Husband's income was substantially greater at the time that these initial decisions were being contemplated. A significant decrease in income could certainly cause many families, intact or otherwise, to reassess their values and prioritize accordingly, and we reiterate that "the court must consider whether and to what extent the parents, if still married, would have contributed to the child's college expenses." *McKay,* 644 N.E.2d at 166. Had the Petry family remained intact, a significant decrease in income such as Husband suffered could have legally precipitated not merely a decision to *limit* parental contribution toward college expenses, but a decision to *cut-off* such funding altogether. Having heard all the evidence, the trial court determined that it was "just and equitable" to limit Husband's contribution to an amount commensurate with an in-state, state-supported education. *Rohn,* 408 N.E.2d at 583. As we are not left with a firm conviction of mistake, this does not amount to clear error. *Carmichael,* 754 N.E.2d at 625.

Curiously, Wife concludes her brief as follows:

> Further, the trial court should require the parents to pay for the post secondary educational expenses for Samantha for her freshman, sophomore, and subsequent years, with [Husband] to be responsible for 72% and [Wife] to be responsible for 8% of the cost of tuition, books, fees, room and board, and other miscellaneous *expenses in the published student budgets of the greater [of] Indiana University or Purdue University, with said amounts may* [sic] *be*

*utilized by Samantha to attend college or university of her choice within or without the State of Indiana.*

Appellant's Br. at 16 (emphasis added). We do not read this statement as a request by Wife that we order the trial court to remove its limitation; rather, we conclude that it is a clarified version of the trial court's finding issued in its November 2007 ruling that more specifically outlines the method by which the in-state, state-supported college fees are determined.

In sum, the evidence regarding the significant decrease in Husband's gross income supports the trial court's order limiting Samantha's educational expenses to amounts commensurate with an in-state, state-supported college. However, to the extent that Wife's proposed finding clarifies the method of obtaining information on in-state, state-supported colleges, we instruct the trial court to adopt it on remand.

### III. Allocation of Abigail's 2007–2008 Expenses

■ Wife contends that the trial erred by failing to enter a finding regarding the allocation of Abigail's 2007–2008 college expenses. As previously stated, we will apply a clearly erroneous standard of review. *Carson,* 875 N.E.2d at 485–86. Abigail's UGMA account was used to pay for her freshman year. Her sophomore year was funded according to Husband and Wife's October 2005 agreed entry, with Abigail paying 20%, Wife paying 8%, and Husband paying 72%. The 2005 apportionment order did not contain a provision limiting covered expenses to those commensurate with an in-state, state-supported college. Without benefit of a specific court order, Husband, Wife, and Abigail paid for Abigail's junior year according to the same percentages as those previously ordered.

As discussed above, the trial court erred in finding that Abigail's UGMA account was sufficient to cover the bulk of her 2007–2008 college expenses. This explains the absence of an allocation finding. Based on the significant reduction in Husband's gross income, we conclude that Abigail's 2007–2008 educational expenses should be apportioned in the same manner as Samantha's, with the total obligation restricted to an amount commensurate with an in-state, state-supported college. On remand, we instruct the trial court to enter a finding consistent with this decision.

### IV. Support for Emancipated Child During College Breaks

■ Finally, Wife asserts that the trial court erred in failing to order Husband to pay support for twenty-one-year-old Abigail during her college breaks. In its November 2007 ruling, the trial court found that Abigail was emancipated and that Husband's obligation to pay support was terminated except for educational expenses. Appellant's App. at 13. Indiana Code Section 31–16–6–6 provides that the duty to support a child ceases when the child turns twenty-one years of age. The support obligation extends beyond age twenty-one if the child is incapacitated or to the extent that it can be deemed an educational expense. Ind.Code § 31–16–6–6(a). The purpose of educational support orders is to permit the trial court to address the educational needs of a child even after she has turned twenty-one. *Carson,* 875 N.E.2d at 486.

A determination of what constitutes educational expenses will be necessary and will generally include tuition, books, lab fees, supplies, student activity fees and the like. Room and board will also be included when the student resides on

campus or otherwise is not with the custodial parent.

Ind. Child Support Guideline 6, cmt.

In *Carson*, we addressed the propriety of including room and board as an educational expense when a child chooses to live at home while attending college. We concluded that the trial court erred in imputing to the father an amount equivalent to on-campus housing, but that he was obligated to pay the mother a fair portion of his otherwise emancipated child's room and board where the child lived at the mother's home and commuted to class. 875 N.E.2d at 487.

Here, twenty-one-year-old Abigail is not a commuter student. Rather, she attends college in New Mexico, and Wife lives in Indiana. Wife essentially argues that Husband's educational support obligation extends to the time that Abigail spends at Wife's home or elsewhere when she is on break from college. As an emancipated twenty-one-year-old, if Abigail were not enrolled in college, she would not be eligible for child support for her expenses incurred during the summer, Christmas, Thanksgiving, etc. Likewise, we do not read *Carson* to require a parent's educational support obligation to cover an on-campus student's off-campus activities while on break from college. The trial court acted within its discretion in not including these as educational expenses.

In summary, we conclude that the trial court's finding that the UGMA accounts were sufficient to cover the bulk of the 2007–2008 educational expenses for both children is clearly erroneous as to Abigail. We affirm the trial court's order limiting Husband's and Wife's educational expense obligations to Samantha to those that would be incurred at an in-state, state-supported college, and we remand to the trial court to clarify the method by which the limitation will be determined. Like-wise, we remand and instruct the trial court to enter a finding regarding the allocation of Abigail's 2007–2008 educational expenses in accordance with the limitations and methods employed for allocation of Samantha's expenses. Finally, we affirm the trial court's finding that twenty-one-year-old Abigail is emancipated and therefore is not entitled to child support during her breaks from college.

Affirmed in part and remanded in part.

KIRSCH, J., concurs.

VAIDIK, J., concurring in part, dissenting in part with separate opinion.

VAIDIK, Judge, concurring in part, dissenting in part.

I respectfully concur in part and dissent in part. I concur in the majority's resolution of each of the issues except for its decision to affirm the trial court's limitation of Husband's obligation to cover a portion of Samantha's college expenses to only the expense commensurate with the cost of an in-state, state-sponsored education.

I recognize that it rests largely within the discretion of the trial court to determine whether a parent must pay for a child's college education and the extent of that financial obligation. However, our Legislature provided guidance for this determination in Indiana Code § 31–16–6–2(a)(1), which provides:

(a) The child support order or an educational support order may also include, where appropriate:

(1) amounts for the child's education ... at postsecondary educational institutions, taking into account:

(A) the child's aptitude and ability;

(B) the child's reasonable ability to contribute to educational expenses through:

(i) work;

(ii) obtaining loans; and

(iii) obtaining other sources of financial aid reasonably available to the child and each parent; and

(C) the ability of each parent to meet these expenses[.]

Additionally, we have repeatedly explained that "the statutory authorization for the divorce court to order either or both parents to pay sums toward their child's college education constitutes a reasonable manner in which to enforce the expectation that most families would encourage their qualified children to pursue a college education *consistent with individual family values." Scales v. Scales,* 891 N.E.2d 1116, 1119 (Ind.Ct.App.2008) (citing *McKay v. McKay,* 644 N.E.2d 164, 166 (Ind.Ct.App.1994), *trans. denied*) (emphasis added). The trial court "must consider whether and to what extent the parents, if still married, would have contributed to the child's college expenses." *Id.* Under the facts of this case, I believe that the trial court should have denied Husband's petition for modification relating to Samantha's college expenses.

The trial court granted Husband's petition for modification relating to Samantha's college expenses with mention only to his significantly decreased income in 2007. Appellant's App. p. 12–13. The court's order makes no mention of the other factors included in Indiana Code § 31–16–6–2(a)(1). In my view, factors (B) and (C), coupled with the educational values of the Petry family, warrant a denial of Husband's motion.

The majority focuses its discussion of this issue upon the undue hardship that it believes Husband will experience if he is required to pay 72% of Samantha's approximate annual $36,468 college expenses. *See* Appellant's App. p. 66. For several reasons, I disagree with the majority's

conclusion that Husband will be placed in a position of undue financial hardship if required to pay this amount.

First, I disagree with the majority's characterization of Husband's 2007 $195,000 income as a "Kia budget." Op. p. 282. Husband's nearly $200,000 income as a physician, despite its decrease from his previous $355,000 income, is a sizeable one.

Second, the majority appears to analyze the hardship that Husband would undergo if required to pay 72% of $86,000 per year for his daughters' educations. Op. p. 281. Indeed, this is how Husband framed his financial obligation during the hearing. Appellant's App. p. 30. However, the parties' older daughter was in her senior year at the time of the hearing and would not require further educational financial assistance from Husband. Therefore, the *future* financial obligation Husband actually faced at the time of the hearing was 72% of $36,468, Samantha's approximate annual expenses at Columbia College. To the extent that the trial court and the majority are concerned about the impact upon Husband of paying 72% of $86,000 during the 2007 academic year, I note that this should not have been a concern, since Samantha's expenses for that year were otherwise covered by the UGMA account previously funded by Husband.

Third, and very importantly, in an effort to demonstrate to this Court how burdensome Samantha's private college expenses would be for him, Father outlined his financial obligations in his appellate brief as follows:

[A]fter income and withholding taxes were taken out of his pay, [Husband] was left with net income of $135,000.00. From that $135,000.00, former Husband incurred basic living expenses of $47,000.00 per year, leaving him with $88,000.00 per year. Former husband

pays child support under the existing order of roughly $120.00 per week, which equates to $7,240.00 per year. Former Husband also pays additional money to Abby for meals not covered by her meal plan at St. John's college in New Mexico of $1,500.00, and pays $4,800.00 per year to Samantha for voice lessons and spending money. This leaves former Husband with $54,000.00 per year, for which he must provide food, gasoline, home repairs, toiletries, haircuts, and make his mortgage payments. Divided by fifty-two weeks per year, the trial court had ample justification to find that former Husband was simply not in an economic position to afford to pay private college expenses for Samantha.

Appellee's Br. p. 14–15. Thus, Husband represented to this Court that he had only $54,000 per year with which to meet his own mortgage obligations and pay for food, gasoline, and other necessities. The record clearly contradicts this claim. To the contrary, the record reflects that Husband actually has approximately $54,000 per year *in disposable discretionary income*, even with his decreased income. This is because the $47,000 "basic living expenses" to which he refers in his brief *include* his first and second mortgages, utilities, car insurance, car maintenance, and basic food expenses. Appellant's App. p. 29–30. By his counsel's own calculations to the trial court during the hearing, Husband does not need to pay any of these expenses from the approximately $54,000 left over after meeting his financial obligations. With all of this in mind, I contend that Husband is quite able to comfortably pay 72% of $36,468 in order to allow Samantha to attend Columbia College. Ind.Code § 31–16–6–2(a)(1)(C).

Additionally, during the hearing, Wife's counsel represented to the trial court that Husband acquiesced in Samantha's choice of a private college and pointed to Husband's approval of sending the parties' older daughter to an out-of-state private college, indicating that the decision was in line with the family's individual educational values. Further, Wife's counsel represented that Samantha was unable to qualify for need-based financial aid because of Husband's high income. Appellant's App. p. 37–38. Husband did not refute either of these claims. These factors also weigh in favor of denying Husband's petition to modify. I.C. § 31–16–6–2(a)(1)(B); *Scales,* 891 N.E.2d at 1119.

For these reasons, I would reverse the trial court's modification of Husband's support obligation as it relates to Samantha's college education.