## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 02 2017, 8:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Darlene R. Seymour | Cynthia A. Marcus |
| Ciyou & Dixon, PC | Marcus Law Firm, LLC |
| Indianapolis, Indiana | Carmel, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Marriage of:

Brett Myers,

*Appellant-Petitioner,*

v.

Lisa Myers (Phifer),

*Appellee-Respondent.*

August 2, 2017

Court of Appeals Case No.
29A02-1701-DR-77

Appeal from the Hamilton
Superior Court

The Honorable Daniel Pfleging,
Judge

The Honorable William
Greenaway, Magistrate

Trial Court Cause No.
29D02-0302-DR-82

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, Brett Myers (Father), appeals the trial court's Order for payment of post-secondary educational expenses and the award of attorney's fees to Appellee-Respondent, Lisa Myers (Mother).

We reverse and remand.

# ISSUES

Father raises two issues for our review, which we restate as:

(1) Whether the trial court properly calculated Father's share of the child's incurred costs to attend college; and

(2) Whether the trial court abused its discretion by ordering Father to pay Mother's attorney's fees in the amount of $3,885.

# FACTS AND PROCEDURAL HISTORY

Father and Mother were married on October 21, 1989.  During the marriage, two children were born:  Evan Myers (Evan),[1] born on May 19, 1992, and Ashley Myers (Ashley), born on July 17, 1995.  Father and Mother separated on February 5, 2003.  On May 23, 2003, the trial court entered its decree of dissolution of marriage between Father and Mother.  Mother was awarded primary physical custody of the children, with Father receiving parenting time

---

[1] Evan has been emancipated and is not attending college.  This appeal only relates to the college expenses incurred by Ashley.

in accordance with the Indiana Parenting Time Guidelines and paying child support. Father was ordered to maintain the children's health and dental insurance, with Mother paying the first $1,000 of uninsured health care costs incurred for the children's benefit per calendar year. Any amounts in excess thereof would be equally shared between Father and Mother. On November 22, 2010, after a hearing on Father's verified petition for modification of child custody, parenting time, child support, and other related issues, the trial court entered an order, determining, in pertinent part, that

> In regards to college expenses for the minor children, that each child shall be responsible for accumulating whatever assistance they may be able to receive, and any balance of college expenses for either of the children shall be split evenly and equal between the parties.

(Appellant's App. Vol. II, p. 29).

On July 25, 2014, the trial court "deemed" Ashley "emancipated for purposes of child support only as of July 17, 2014." (Appellant's App. Vol. II, p. 30). The order specified that child support would be terminated but "all other orders in regard to this case and the child of the parties [shall] remain in full force and effect[.]" (Appellant's App. Vol. II, p. 30). In August of 2014, Ashley enrolled at Indiana University Bloomington (IUB). She lived in the dormitories during the school year and with Mother in the summer of 2015. Ashley returned to IUB for her sophomore and junior years in August 2015 and 2016, while living in an apartment near campus.

[6] On February 29, 2016, Father filed his verified petition for rule to show cause, related to uninsured medical expenses incurred on behalf of Ashley, as well as Mother's refusal to allow Father to claim Ashley for tax purposes. On July 18, 2016, Mother filed a verified motion for contempt, relating to Father's share of Ashley's college expenses, and on November 4, 2016, filed a motion for reimbursement of college expenses.

[7] After a hearing, the trial court issued its Order, denying Father's petition and concluding, with respect to the post-secondary educational expenses:

> 14. Father testified that he had received no documentation from either Mother or Ashley as to Ashley's post-secondary educational expenses. Father appeared to be indulging in the bliss of ignorance and had made no realistic effort to determine any of this information. Father testified that he had "briefly" looked at the college expense bills provided during discovery, but did not pay then because "they were discovery."

> 15 The [c]ourt will find that Ashley's uninsured medical expenses should be considered as part of her post-secondary educational expenses and be divided equally between the parties.

> 16. The Agreement specifically states how post-secondary educational expenses are to be paid.

> 17. Father testified that he had paid $2,000.00 for a summer class at IU. Given Father's uncertainty as to this actual amount, the [c]ourt is unable to find what he actually paid.

18.  Father shall reimburse Mother $18,067.61 for his portion of Ashley's educational expenses.  This payment shall be made within 180 days or reduced to judgment.

19.  Father shall reimburse Mother $3,885.00 for the attorney fees that she has incurred in defending what appears to be a generally baseless action and in securing reimbursement of Ashley's post-secondary expenses.

(Appellant's App. Vol. II, p. 13) (internal footnote omitted).

Father now appeals.  Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

### I.  *Post-Secondary Educational Expenses*

Father contests the trial court's treatment of post-secondary educational expenses.  While Father does not challenge Ashley's aptitude for post-secondary education or the apportionment of the costs thereof, Father takes umbrage with the calculation of and the inclusion of certain expenses.  When we review a challenge to an order apportioning college expenses, we apply a clearly erroneous standard.  *Carson v. Carson*, 875 N.E.2d 484, 485-86 (Ind. Ct. App. 2007).  However, where, as here, the decision to order the payment of extraordinary educational expenses is challenged, our review should be based on an abuse of discretion standard.  *Snow v. Rincker*, 823 N.E.2d 1234, 1237 (Ind. Ct. App. 2005), *trans. denied*.  As a result, "[r]eversal is appropriate only if we find the trial court's decision is against the logic and effect of the facts and

circumstances before the court or the reasonable inferences drawn therefrom."
*Id*.

[10] Under Indiana law, there is no absolute duty on the part of parents to provide a college education for their children. *Hinesley-Petry v. Petry*, 894 N.E.2d 277, 280 (Ind. Ct. App. 2008), *trans. denied*. However, the statutory authorization for the divorce court to order either or both parents to pay sums toward their child's college education constitutes a reasonable manner in which to enforce the expectation that most families would encourage their qualified children to pursue a college education consistent with individual family values. *Id*. at 280-81. In determining whether to order either or both parents to pay sums toward their child's college education, the court must consider whether and to what extent the parents, if still married, would have contributed to their child's college expenses. *Id*. at 281.

[11] The purpose of an educational support order is the welfare of the child and not the punishment of the custodial parent. *Id*. It must be fair, not confiscatory in amount and intended to provide a reasonable allowance for support, considering the property, income, and earning capacity of the non-custodial parent, and the station in life of the family. *Id*. It is within the discretion of the trial court to determine under all the circumstances what is just and equitable to the child and the noncustodial parent. *Id*.

[12] We first note that a child support order and an educational expense order are separate and distinct. *Knisely v. Forte*, 875 N.E.2d 335, 340 (Ind. Ct. App.

2007), *reh'g denied*. Indiana Code section 31-16-6-2 governs educational support, even if the child is emancipated, and provides that an educational support order may include amounts for the child's education in institutions of higher education. The statute requires the trial court to consider the child's aptitude and ability; the child's reasonable ability to contribute to educational expenses; and the ability of the parents to pay the expenses. I.C. § 31-16-6-2(a)(1). It is discretionary with the court to award post-secondary educational expenses and in what amount. In making such a decision, the court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to the payment of the expense, as well as the ability of the student to pay a portion of the expense. Ind. Child Support Guideline 8(b).

[13] Here, the parties' obligation to pay post-secondary educational expenses was instituted by the trial court in its order issued on November 22, 2010, as follows:

> In regards to college expenses for the minor children, that each child shall be responsible for accumulating whatever assistance they may be able to receive, and any balance of college expenses for either of the children shall be split evenly and equal between the parties.

(Appellant's App. Vol. II, p. 29). In other words, after taking into consideration Ashley's scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to her, the remaining costs are to be shared equally between Father and Mother. *See Gilbert v. Gilbert*, 777 N.E.2d 785, 794 (Ind. Ct. App. 2002). Although the order did not include

an obligation for Ashley to maintain a certain minimum level of academic performance, there is no requirement for a trial court to incorporate one in each case. *See In re Marriage of Blanford*, 937 N.E.2d 356, 365 (Ind. Ct. App. 2010) ("[W]hether a minimum grade point average is appropriate, and, if so, the precise level . . . should be determined on a case-by-case basis.").

[14] While the trial court crafted a provision for the payment of post-secondary educational costs by the child and the parents, the court omitted to specify what it considered appropriate educational expenses. In such case, we turn to the Indiana Child Support Guidelines (Guidelines) for guidance. Guideline 8(b) states that "[a] determination of what constitutes educational expenses will be necessary and will generally include tuition, books, lab fees, course related supplies, and student activity fees. Room and Board may be included when the child does not reside with either parent." "A post-secondary educational order may include medical, dental, and optical insurance costs, as well as other health care costs, where the court finds such costs appropriate." *Cubel v. Cubel*, 876 N.E.2d 1117, 1120-21 (Ind. 2007). Other appropriate extraordinary educational expenses that have been taken into account by courts in the past are transportation, car insurance, clothing, entertainment and incidental expenses. *Snow*, 823 N.E.2d at 1240.

[15] In fashioning its Order and calculating Father's share of post-secondary educational expenses, the trial court relied solely on Mother's Exhibit G, a print out of a generic bank statement representing charges incurred by her, without any corresponding receipts or invoices that would connect the amount with the

specific educational charges paid. For example, several references are made to different amounts paid to Amazon Marketplace, with Mother's annotation denoting 'books.' However, without the underlying invoice or order receipt reflecting the book purchases, an Amazon Marketplace payment can cover a multitude of varying purchases, educational or non-educational related. Likewise, several charges reflect payments for auto insurance, license plates, car repair, and tires, without the trial court first establishing that it was "necessary" for Ashley to have a vehicle at college. *Borth v. Borth*, 806 N.E.2d 866, 871-72 (Ind. Ct. App. 2004) (We concluded that the trial court did not abuse its discretion by including the cost of a vehicle in its calculation of college expenses as it was determined necessary to have a vehicle at school because the child lived off campus). Also, Mother requested reimbursement for Ashley's bodybuilding expenses. She clarified this expense during the hearing, noting that Ashley is "a competitive weight lifter[,]" which is something she "chooses to do outside of college," not as a student and without competing on a college team. (Transcript p. 58). Mother failed to connect this expense with Ashley's college education.

[16]   Turning to Mother's request for reimbursement of Ashley's residential costs, we note that Ashley lived in the dormitories during her freshman year in college. While it is undeniable that dormitories' costs are educational expenses, Mother did not submit any evidence as to the amount she paid. Similarly, although Mother is requesting reimbursement of the rental payments she made during Ashley's sophomore year, Mother's only evidence consisted of a spreadsheet

composed of amounts purportedly paid as rental payments on Ashley's behalf. The evidence failed to contain any lease agreement, the rental amount, or term of the lease.

[17] In addition to these evidentiary omissions, we are mostly concerned by the complete lack of evidence of Ashley's tuition costs at IUB and any indication that Ashley's scholarships, grants, student loans, summer and school year employment were taken into account. Mother testified that Ashley "received money for grants for doing well on her SATs. She got grant money for that. She got grant money for a work-study program. . . .[S]he got a lot of grant money." (Tr. p. 61). Mother admitted that she did not present a copy of Ashley's financial assistance. Additionally, Mother stated that even though Ashley contributes by working, Mother does not know how much Ashley makes, nor has she given Father any confirmation "as to what Ashley's contributions to her expenses were[.]" (Tr. p. 66). Although Mother made vague statements that she had provided some information to Father, she also admitted not to have that same information available during the hearing and she conceded that she had never asked Father to pay his share of the expenses.

[18] In sum, Mother represented that Ashley's college expenses amounted to $ 36,135.23, which—according to Mother's testimony—included, "[e]verything that is incurred for her while she is in college" and everything "that she has to have[.]" (Tr. pp. 57-58). Of this total amount, the trial court ordered Father to pay $18,067.61 towards his share of Ashley's post-secondary educational expenses. Because there is a lack of evidence establishing the underpinnings of

the trial court's numbers, we find that the trial court's order is erroneous. We reverse the trial court's order with respect to its calculation of the post-secondary educational costs and remand to the trial court with instruction to conduct an evidentiary hearing and to enter findings regarding the amount and allocation of Ashley's college expenses in accordance with the guidelines of this opinion.

## II. *Award of Attorney's Fees*

Father contends that the trial court abused its discretion when it ordered him to pay $3,885 in Mother's attorney's fees. In post-dissolution proceedings, the trial court may order a party to pay a reasonable amount for attorney's fees. I.C § 31-16-11-1; *Bessolo v. Rosario*, 966 N.E.2d 725, 733 (Ind. Ct. App. 2012), *trans. denied*. The trial court has broad discretion in awarding attorney's fees. *Id*. Reversal is proper only where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. *Id*. In assessing attorney's fees, the trial court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors bearing on the reasonableness of the award. *Id*. In addition, any misconduct on the part of a party that directly results in the other party incurring additional fees may be taken into consideration. *Id*. "Further, the trial court need not give its reasons for its decision to award attorney's fees." *Id*. (quoting *Thompson v. Thompson*, 811 N.E.2d 905, 928 (Ind. Ct. App. 2004)), *trans. denied*.

[20] The basis for the award of attorney's fees is Mother's defense of "a generally baseless action" pursued by Father against Mother and Mother's claim for "reimbursement of Ashley's post-secondary expenses." (Appellant's App. Vol. II, p. 13). It appears from the Order that the trial court concluded that Father engaged in misconduct by challenging Mother's request for payment of post-secondary educational expenses. However, as we pointed out, Father's challenge is not entirely without merit. The record reflects that Mother did not always submit all documentation to Father, and Mother admitted that she did not request Father to "pay his 50% portion." (Tr. p. 64).

[21] With respect to Father's pursuit of a "baseless action" against Mother, we note that Father's Verified Motion for Rule to Show Cause was based on Father's request for payment of uninsured medical expenses incurred on behalf of Ashley and Mother's refusal to allow Father to claim Ashley as a dependent for tax purposes. In the original decree of dissolution of marriage, Mother was ordered to pay the first $1,000 of the children's uninsured medical health care costs. When the trial court issued its order, emancipating Ashley, on July 25, 2014, the court specified that the emancipation was "for purposes of child support **only**[.]" (Appellant's App. Vol. II, p. 30) (emphasis added). The order further referenced that child support would be terminated but "all other orders in regard to this case and the child of the parties [shall] remain in full force and effect[.]" (Appellant's App. Vol. II, p. 30). Based on this order, Father, in good faith, could have concluded that the provision concerning the uninsured medical expenses was still in effect. With respect to the tax exemption, the

dissolution decree provided that each party would take one child as an exemption. As a result, Father listed Evan as a tax exemption and Mother listed Ashley. However, the agreement is silent as to what happens when only one child is eligible to be listed as a tax exemption. Therefore, as the agreement is silent, Father could reasonably make the request to take Ashley as a tax exemption when Evan became ineligible. Accordingly, we conclude that the trial court abused its discretion in awarding Mother attorney's fees and we reverse the trial court's order.

# CONCLUSION

[22] Based on the foregoing, we conclude that the trial court abused its discretion when calculating Father's share of the post-secondary educational costs; and the trial court abused its discretion in awarding Mother attorney's fees.

[23] Reversed and remanded for further proceedings in accordance with this opinion.

[24] Najam, J. and Bradford, J. concur