# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 21 2020, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Zechariah S. Landers
Coldren, Frantz & Sprunger
Portland, Indiana

Cory M. Sprunger
Sprunger & Sprunger
Berne, Indiana

Veronica Nicholson
Sprunger & Sprunger
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Ryan L. Groves
McKinney & Malapit Law
Muncie, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

Michelle Miller (Ross),

*Appellant-Petitioner,*

v.

David Miller,

*Appellee-Respondent*

October 21, 2020

Court of Appeals Case No. 20A-DR-882

Appeal from the Randolph Circuit Court

The Honorable Jay L. Toney, Judge

Trial Court Cause No. 68C01-0705-DR-207

**Crone, Judge.**

## Case Summary

[1] Following a protracted custody dispute between Michelle Miller Ross (Mother) and David Miller (Father), the parties agreed to participate in a family therapy program with a New York therapist chosen by Mother and to follow all of the therapist's reasonable recommendations. When the therapist issued her recommendations, Father objected to them as unreasonable and filed a motion to that effect in the trial court. After an evidentiary hearing, the trial court issued an order ruling that the therapist's recommendations are unreasonable and therefore nonbinding. The court also denied Mother's request for attorney's fees. Mother now appeals those rulings. We affirm.

## Facts and Procedural History

[2] Mother and Father are the parents of two daughters, Mc.M. (Older Child), born in December 2002, and Ms.M. (Younger Child), born in November 2006 (collectively the Children). When the couple divorced in 2008, the trial court awarded Mother primary physical custody and ordered joint legal custody. In March 2015, the Indiana Department of Child Services (DCS) removed the Children from Mother's care and placed them with Father based on a report of Mother's neglect and sexual abuse of Younger Child by Mother's husband M.R. (Stepfather). Immediately thereafter, Father filed a motion for emergency temporary custody, which was granted, as well as a petition to modify the dissolution decree with respect to custody and child support. DCS filed a petition to have the Children adjudicated children in need of services. Mother and Father agreed to have all parenting issues addressed in the CHINS

proceedings, and in August 2016, Father was granted sole physical custody. Mother was granted parenting time subject to the recommendations of the therapists involved in the CHINS case.

[3]     After the CHINS dismissal, in November 2017, Mother filed a petition to modify custody, parenting time, and child support. Father filed a notice of objection and a motion for in-camera interview, based on a DCS assessment that substantiated the sexual abuse allegations against Stepfather. Respondent's Ex. E. In August 2018, Mother and Father entered into a settlement agreement, which provided for an evaluation by a New York therapist chosen by Mother. The therapist, Linda Gottlieb, owns a company specializing in remedial therapy for families with parental alienation. The agreement between Mother and Father reads, in relevant part,

> 12. Pending completion of Linda Gottlieb's evaluation, she shall immediately submit her findings and recommendation for the scope and parameters of her proposed program based upon this family's specific set of circumstances to the Court.

> 13. Both Parties agree to follow Linda Gottlieb's recommendations, including any reasonable changes made during the course of implementation of recommendations based upon how the family is reacting to re-unification, unless that Party can demonstrate that said recommendation is unreasonable. The parties agree that the Court shall retain authority to determine any changes in parenting time in the event of a disagreement of the parties.

Appellant's App. Vol. 2 at 52-53.

On October 29, 2018, the trial court approved the settlement agreement and gave the parties ten days to object to any of Gottlieb's recommendations, which at that time were forthcoming. The next day, Gottlieb issued her recommendations, which included relocating the Children to New York to attend a four-day intervention with both Mother and Stepfather; a temporary or permanent transfer to Mother of sole legal and physical custody; a ninety-day no-contact period between the Children and Father, with an indefinite extension of the no-contact period should Father fail to support Mother's relationship with the Children; that Father must attend education and therapy services at Gottlieb's New York facility to address his unsupportive behavior and admit that alienation is a form of psychological child abuse; that Father write the Children a letter, to be pre-approved by Gottlieb, on the importance of having Mother in their lives and including a statement of Mother's good qualities; and that Father provide mementos and photographs showing Mother's involvement. Petitioner's Ex. 10.

On October 31, 2018, Father filed an objection to the recommendations and requested a stay of the implementation of the program pending a hearing. He challenged as unreasonable Gottlieb's recommendations that Stepfather be present and participate in the therapy with Mother and Children, that the Children be relocated to New York during the school year, and that there be a ninety-day ban on communication between Children and Father, subject to extension at Gottlieb's discretion. Appellant's App. Vol. 2 at 56-59. Additionally, Father alleged certain irregularities during the course of Gottlieb's

evaluation and challenged Gottlieb's claims that he had engaged in severe alienation and posed a danger to the Children. *Id*. at 59. Shortly thereafter, Mother filed a motion for rule to show cause based on Father's noncompliance with Gottlieb's recommendations. Following a December 4, 2018 hearing, the trial court found that Father had not willfully failed to follow the court's order and denied Mother's motion.

[6] The trial court conducted a series of hearings on the remaining pending motions in early 2019, during which it admitted into evidence without objection the DCS assessment substantiating the sexual abuse allegations against Stepfather. Respondent's Ex. E. Three therapists who had treated the Children over a prolonged period testified that participation in Gottlieb's program would impair their emotional development and endanger their physical health. Dr. Paul Spengler assessed Gottlieb's parent alienation program and wrote a report, concluding in part that Gottlieb's judgments throughout her report reflect extreme and unwarranted confidence and reflect what is known in clinical judgment literature as overconfident bias. He testified that there is a debate in the literature concerning the validity of parent alienation syndrome and noted that Gottlieb's conclusions were replete with "very extreme statements of confidence." Tr. Vol. 2 at 215-16. He also explained his observations of Gottlieb's methodology and, particularly, irregularities he found in Gottlieb's report, such as the lack of any assessment of risk factors. *Id*. at 228, 236. The parties submitted their proposed findings and conclusions. In March 2020, the trial court issued an order with findings of fact and conclusions thereon, ruling

that Gottlieb's recommendations were unreasonable and therefore nonbinding. The court also denied requests by both parties for attorney's fees. Mother filed a motion to correct error, which the trial court denied. She now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – Mother has failed to demonstrate clear error in the trial court's conclusion that Gottlieb's recommendations were unreasonable and therefore nonbinding.

[7] Mother contends that the trial court erred in ruling that Gottlieb's recommendations were unreasonable. Where, as here, the trial court has issued findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), we review them for clear error. *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016). We will not set aside the court's findings or judgment unless they are clearly erroneous, meaning that there are no facts or reasonable inferences drawn therefrom to support them. *In re Marriage of Sutton*, 16 N.E.3d 481, 485 (Ind. Ct. App. 2014). We give due regard to the trial court's opportunity to assess the credibility of witnesses and therefore consider only the evidence and reasonable inferences favorable to the judgment without reweighing the evidence or assessing witness credibility. *Nelson v. Nelson*, 10 N.E.3d 1283, 1285 (Ind. Ct. App. 2014). We do not defer to the trial court's conclusions of law and will find clear error if the court has applied the wrong legal standard. *Sexton v. Sexton*, 970 N.E.2d 707, 710 (Ind. Ct. App. 2012), *trans. denied*.

Here, the trial court's findings of fact include the following:[1]

11. Ms. Gottlieb has indicated that the following stipulations by Court order must include: 1) the child to accompany the rejected parent to New York to attend the 4-day intervention at [Gottlieb's facility]; 2) a temporary or permanent order for the transfer of sole physical and legal custody to the rejected parent; 3) a 90 day no-contact period between the child and the favored parent; this must include all telephone and electronic communications as well as physical contact; 4) a requirement for the favored parent to accept parent education services with [Gottlieb's firm]; 5) the favored parent must write a letter to the child stating the importance of having the rejected parent in the child's life and in what specific ways; the qualities the rejected parent has to offer the child; and that further, she/he supports the reunification and why. This letter is to be approved by [Gottlieb] before being given to the child; 5) the favored parent is to provide the alienated parent with any mementos, videos, pictures, and other materials indicative of the family history and of the alienated parent's involvement with their child to be used in the intervention; 6) a provision for an indefinite extension of the no-contact period should the favored parent fail to support the rejected parent's relationship with their child. [Gottlieb] will collaborate with the favored parent's support for the relationship and will notify the court if so requested; 7) the favored parent is to engage with a [Gottlieb]-approved therapist to address the behaviors that had been unsupportive of the relationship between the other parent and their child, to gain awareness that alienation is a form of psychological child abuse, and to recognize that it is in the child's best interests for the other parent to be meaningfully in the child's life. Before the no-contact period can be lifted, the therapist should provide documentation that the favored parent is ready, willing, and able to support the relationship between the

---

[1] The findings refer to the parties by name or party designation. We refer to them as previously indicated.

other parent and their child and will abstain from alienating behaviors. (The Court recognizes that there are two section 5's in this paragraph; that is the way it appears in the summary of Ms. Gottlieb's program, submitted as Exhibit 10 on March 19, 2019.)

….

15. Ms. Gottlieb reviewed what counsel for Mother describes as the "clinical picture," including the Children's statements, Stepfather's lie detector test results, therapy notes, and CHINS records, and reached the conclusion that "the sex abuse allegations (by Stepfather against Younger Child) lacked merit."

16. The prosecuting attorney did not file criminal charges against Stepfather regarding the sexual abuse allegations.

17. Younger Child first revealed the allegations of sexual abuse to her stepmother, Sarah Miller.

18. Younger Child next disclosed the allegations of sexual abuse to Father ….

19. Younger Child also disclosed sexual abuse allegations against Stepfather in a forensic interview.

20. Younger Child reported to Aubrey Driscoll, therapist for the girls collectively, and for Older Child individually, that she was sexually abused by Stepfather.

….

22. That Older Child was in the home at the time Younger Child indicates that Stepfather abused her.

23.  In the CHINS cases involving the minor children in Allen Superior Court, the Court attached and incorporated into its Order on Review Hearing dated September 8, 2016, the DCS assessment regarding the sexual abuse allegations. The Conclusion Statement to this Assessment states as follows:

"The Department finds that there is a preponderance of evidence to support the allegations of sexual abuse of Younger Child by the perpetrator Stepfather and the neglect of the Children by the perpetrator Mother.  The allegations dated 3/15/15 are substantiated. Due to the fact that during a forensic interview Younger Child disclosed penile and digital penetration of her vagina. She was able to describe the incident in graphic detail with descriptions that are not common for a child of her age to have knowledge about. Younger Child was able to clearly articulate what occurred, in a narrative style, that it was not believed that she was coached to make this disclosure.  Older Child was able to corroborate Younger Child's disclosure with what she witnessed.  In addition, both Children voiced concern for being at Mother's home due to physical discipline and statements that were contrary to their emotional well[-]being. Older Child went as far as to disclose that she had thoughts of suicide if she were made to return to Mother's home. The detail that Older Child was able to describe also lead [sic] the team to believe that she was not coached to make a disclosure. Mother was explained the disclosures in detail and maintains that the Children are lying and there is no truth to their disclosure. This assessment is recommended to be transferred to the permanency unit for further supervision."

24.  Stepfather would be included in the 4-day program with Mother and the minor Children.

Appealed Order at 4-6.

[9]     Mother asserts that the trial court clearly erred because it failed to state the basis for its determination that Gottlieb's recommendations are unreasonable. She claims by not enforcing the settlement agreement and requiring the parties to submit to Gottlieb's program, the trial court has "effectively terminated Mother's parenting time … without a single finding that [it] would be harmful to the children, … endanger the children's physical health, or … significantly impair the children's emotional development." Reply Br. at 8. *See Rickman v. Rickman*, 993 N.E.2d 1166, 1168 (Ind. Ct. App. 2013) ("A decision about parenting time requires us to give foremost consideration to the best interests of the child[ren]."). We disagree with Mother's characterization. The trial court was tasked with hearing and examining the underlying evidence and resolving a specific question: were Gottlieb's recommendations unreasonable and therefore nonbinding? The court answered that question in the affirmative. While it is true that Gottlieb's recommendations implicated parenting time, at least temporarily, the issue was not separately before the court because Mother did not file a formal request for it. *See* Appealed Order at 3 (court's unchallenged finding, "there is no request for modification of parenting time pending."); *see also* Appellant's App. Vol. 2 at 53 (settlement agreement specifically vested trial court with the authority to make changes in parenting time). Nothing prevented Mother from making such a filing.

[10]    Even so, the findings and judgment as a whole indicate that the trial court considered the Children's best interests in assessing the (un)reasonableness of Gottlieb's recommendations. The court was careful not to indict Gottlieb's

program in general but instead concluded that the recommendations were unreasonable for this specific family. Emphasizing the fact-sensitive nature of its determination, the court articulated numerous bases for its decision: Younger Child's revelations to her therapists that Stepfather sexually abused her (keeping in mind the different considerations involved in bringing criminal charges versus substantiating allegations in the context of family law and CHINS proceedings); Gottlieb's conclusions concerning the abuse, which the court characterized as "completely discount[ing] even the possibility that [Younger Child] was sexually abused"; and the requirements that the Children participate in Gottlieb's program with Stepfather (the alleged abuser), in a faraway state, under absolute isolation from Father and from home for at least ninety days. Appealed Order at 8. The trial court essentially conducted a totality-of-the-circumstances analysis, and as such, considered the Children's best interests. *See Kirk v. Kirk*, 770 N.E.2d 304, 308 (Ind. 2002) (determination of child's best interests requires court to focus on totality of circumstances).

[11] Alternatively, Mother contends that the trial court erred in not applying contract principles to its review of the parties' settlement agreement. She has failed to develop a cogent argument on this claim as required by Indiana Appellate Rule 46(A)(8) and has waived consideration of this argument. *Basic v. Amouri*, 58 N.E.3d 980, 984 (Ind. Ct. App. 2016). Waiver notwithstanding, "freedom of contract principles that govern property settlements do not apply to child support and child custody because of the 'overriding policy concern [to] protect[] the welfare and interests of children.'" *Copple v. Swindle*, 112 N.E.3d

205, 211 (Ind. Ct. App. 2018) (quoting *Voigt v. Voigt*, 670 N.E.2d 1271, 1278 n.10 (Ind. 1996)). Even if the rules of contract interpretation were applicable, the plain language of the settlement agreement would not work in Mother's favor, as it requires each party to follow Gottlieb's recommendations "unless that Party can demonstrate that said recommendation is unreasonable." Appellant's App. Vol. 2 at 53. The court simply examined the evidence and ruled that the terms of Gottlieb's program were unreasonable. Mother's argument lacks merit.

[12] Additionally, Mother submits that the trial court erred in incorporating into its findings a DCS assessment that substantiated the sexual abuse allegations against Stepfather. *See* Appealed Order at 6 (finding 23). She challenges the assessment on hearsay grounds. When Father introduced the assessment as part of Respondent's Exhibit E, Mother did not object. Tr. Vol. 2 at 247. She therefore has waived consideration of this claim on appeal. *See In re Paternity of C.S.*, 964 N.E.2d 879, 886 (Ind. Ct. App. 2012) (Mother waived challenge to trial court's consideration of expert's updated custody evaluation by failing to object below), *trans. denied*. Mother now claims that what the court did below actually amounted to taking judicial notice of CHINS records. She asserts that a court may take judicial notice of the records but not of facts within those records. *Matter of D.P.*, 72 N.E.3d 976, 982-83 (Ind. Ct. App. 2017). Here, the trial court first referenced judicially noticing the records from the CHINS case but ultimately admitted the challenged portion of the DCS assessment of sexual

abuse when it admitted Exhibit E. At no time did Mother object or ask for a clarification from the trial court.

[13] Moreover, the record includes testimony from Father and from the Children's three therapists that the sexual abuse allegations had been substantiated. Father articulated that it was the sexual abuse allegations (and Mother's correlating neglect) that precipitated the CHINS proceedings and emergency change of custody to him. *See* Tr. Vol. 2 at 244 (Father's testimony that "[Younger Child] disclosed a sexual abuse against her stepfather. So, on that following day we filed a police report and then on, I believe, it was the following Thursday, [DCS] of Allen County conducted a forensic interview with the girls."). Thus, even if the underlying CHINS facts were improperly judicially noticed, the critical fact that the sexual allegations were substantiated was peppered throughout the record. Thus, the allegedly improper evidence was cumulative of properly admitted evidence, and therefore its admission did not amount to reversible error. *See Matter of A.F.*, 69 N.E.3d 932, 942 (Ind. Ct. App. 2017) ("Admission of hearsay evidence is not grounds for reversal where it is merely cumulative of other evidence admitted."), *trans. denied*. Based on the foregoing, we conclude that Mother has failed to demonstrate clear error in the trial court's ruling that Gottlieb's recommendations were unreasonable.

## Section 2 – The trial court acted within its discretion in concluding that Mother is not entitled to attorney's fees.

[14] Mother also challenges the trial court's decision not to award attorney's fees. In post-dissolution proceedings, the trial court has broad discretion in awarding

attorney's fees, and we review the trial court's ruling for an abuse of discretion, which occurs when the decision is against the logic and effect of the facts and circumstances before it. *Myers v. Myers (Phifer)*, 80 N.E.3d 932, 938 (Ind. Ct. App. 2017). The trial court is not required to state its reasons for its decision to award attorney's fees. *Id*.

[15] "The general rule regarding attorney fees – known as the American Rule – is that each party bears its own attorney fees." *Cavello v. Allied Physicians of Michiana, LLC*, 42 N.E.3d 995, 1006 (Ind. Ct. App. 2015). Among the exceptions to the American Rule are attorney's fee awards for frivolous, unreasonable, or groundless actions and attorney's fee awards in domestic relations matters. Ind. Code §§ 34-52-1-1, 31-15-10-1. In any civil action, the trial court may award attorney's fees to the prevailing party if it finds that either party brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless. Ind. Code § 34-52-1-1(b)(1). In domestic relations actions, the trial court may order attorney's fees after considering factors such as the relative resources, employability, and earning ability of the parties and any misconduct by one party that directly results in the other party incurring additional fees. *Myers*, 80 N.E.3d at 938.

[16] Here, both parties sought attorney's fees, and the trial court concluded that neither was entitled to them. Because Father did not cross-appeal this issue, we address only Mother's request for attorney's fees. In evaluating Mother's request, the trial court specifically concluded, "if [Father] believes his daughter, he is acting reasonably as well. He has followed Orders of the courts involved,

and has prevented contact between the Children and [Stepfather]. This conduct is exactly what would be expected from a parent in this position." Appealed Order at 9. On appeal, Mother focuses her fee request on what she characterizes as a frivolous, groundless action by Father in filing his objection to Gottlieb's recommendations. A claim is frivolous if it is taken primarily to harass the other party, it is unreasonable if no reasonable attorney would consider the claim worthy of litigation, and it is groundless if no facts exist that support the legal claim presented by the losing party. *Waterfield v. Waterfield*, 61 N.E.3d 314, 335-36 (Ind. Ct. App. 2016), *trans. denied* (2017). Mother was not the prevailing party. Indiana Code Section 34-52-1-1 simply does not apply.

[17] That said, the trial court appeared to apply the considerations applicable in domestic relations cases, and since Mother did not raise any argument regarding the parties' relative financial circumstances, the court simply concluded that Father did not engage in misconduct but rather acted reasonably in objecting to the recommendations and filing his objection within the ten-day period prescribed by the court. As discussed, the issue before the trial court was whether Gottlieb's recommendations were unreasonable; the parties simply had different opinions concerning the answer to that question. Father did not engage in misconduct, let alone misconduct causing Mother to incur additional fees. As such, the trial court acted within its discretion in denying Mother's request for attorney's fees. Accordingly, we affirm.

Affirmed.

Robb, J., and Brown, J., concur.